No. 22-16826

*In the*
# UNITED STATES COURT OF APPEALS
*for the*
# NINTH CIRCUIT

TGP COMMUNICATIONS, LLC, D/B/A THE GATEWAY PUNDIT,
AND JORDAN CONRADSON,

*Plaintiffs-Appellants,*

v.

JACK SELLERS, THOMAS GALVIN, BILL GATES, CLINT HICKMAN, STEVE GALLARDO, STEPHEN RICHER, REY VALENZUELA, SCOTT JARRETT, MEGAN GILBERTSON, AND MARCUS MILAM,

*Defendants-Appellees.*

On Appeal from the
United States District Court for the District of Arizona
No. 2:22-cv-01925-JJT
The Honorable John J. Tuchi

# REPLY IN SUPPORT OF MOTION
# FOR AN INJUNCTION PENDING APPEAL

Marc J. Randazza
RANDAZZA LEGAL GROUP, PLLC
4974 S. Rainbow Blvd., Suite 100
Las Vegas, Nevada 89118
Tel: 702-420-2001
ecf@randazza.com

David S. Gingras
GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
Phoenix, AZ 85044
Tel.: (480) 264-1400
david@gingraslaw.com

Attorneys for Appellants

## 1.0 The Issue in a Nutshell

This is an urgent and exigent "hot news" situation requiring emergency relief. The Gateway Pundit (TGP) has reported on political issues since 2004 and reaches millions of viewers per day. (Tr. 57: 2-10)[1] Jordan Conradson is a full-time reporter for TGP covering Arizona politics for more than 18 months. (Tr. 57: 7-13) TGP coverage has been hard hitting. Recently, they published that Maricopa County Supervisor Steve Chucri was an "election denier," leading to his resignation from office. (Tr. 36: 2-25) Thereafter, Maricopa County's relationship with the Appellants became adversarial. (Tr. 36-37: 25-2)

In September, Maricopa changed its policy of open press; requiring journalists to apply for a pass. Appellants were denied for viewpoint-based reasons.[2]

> On September 30, 2022, three days after Mr. Conradson applied for a press pass, the County notified him by email that his application was denied. (Def. Ex. 13.) The email stated that he was denied based on the following criteria: "You (a) do not avoid real or perceived conflicts of interest and (b) are not free of associations that would compromise journalistic integrity or damage credibility. Therefore, you are not a bona fide correspondent of repute in your profession." [*Order at 4.*]

Maricopa claims this has nothing to do with Appellees' content or viewpoint, but merely with the "quality" of his writing. When the government takes on the role of "media critic" it violates the First Amendment.

---

[1] The transcript of proceedings at the District Court is at Appeal Dkt. No. 5-2.
[2] There is no evidence in the record, nor known to Appellants, of anyone else being denied a press pass.

> "First Amendment rights do not turn on, nor are they calibrated to, the quality of the reporting. Imagine a system where the government doled out the freedom of press based on a government official's assessment of the quality of the reporting or the credentials of the reporters." *See Lund v. City of Rockford, Illinois*, 956 F.3d 938, 941 n.1 (7th Cir. 2020).

Meanwhile, a centerpiece of the government's argument is that it does not like Conradson's "language" and he intersperses opinion in his articles.

> Mr. Conradson then expresses an opinion about the news report or press release and supports that opinion by referencing like-minded social media posts, prior articles by The Gateway Pundit, and allying websites that express the same viewpoints. Moreover, each article uses inflammatory and/or accusatory language, such as "Fake News Media," "globalist elitist establishment," and "highly flawed 2022 Primary Elections." [*Opp. to Mot. for Inj. at 6*]

The government admits that Conradson's criticism of the press pass criteria itself is reason to keep him out of the press conferences.

> "[H]is article about the creation of the Press Pass criteria, the three articles he submitted, as well as his associations, clearly indicate that he was properly denied a Press Pass for the reasons cited in the denial email." [Opp. to Mot. for Inj. at 11]

Part of what Maricopa doesn't like about Conradson is their perception that "he doesn't contact us to seek the truth or to seek our response to what an accusation might be." (Tr. 70:4-6) The First Amendment does not require that, but the evidence in the record shows that this is not true. (*See* Dkts. 13-1 through 13-10) Let us assume *arguendo* that it *was* true *and* required – how is this remedied by locking him out press conferences – when this is the best possible place to do what they

2

claim they want him to do? Imagine a lawyer failing to do adequate legal research, and the sanction is that he is barred from using the government-provided law library.

Maricopa claims it instituted the press pass because in 2020 "several people were not members of the media… managed to follow legitimate news crews into the lobby of MCTEC" and this was a security concern. (Tr. 63: 29-21) However, there is plenty of evidence, even put on by Maricopa, that Appellants are "legitimate news crews." Maricopa arguably should be able to limit the number of people in press conferences, and to screen out mere interlopers or protesters. TGP has more readers than the largest newspaper in Arizona – the Arizona Republic, which claimed to have 9 million unique visitors to its website per *month*.[3] Meanwhile TGP has 3.5 million per *day*. (Tr. 57: 6-9) CNN claims about 4.8 million per day.[4] TGP is "legitimate news." Conradson has, even as a young journalist, landed an interview with Kari Lake (Tr. 35: 16-17) He did not interview her opponent. He tried, but she would not speak to him. (Tr. 35: 15) He was the first to report on the Chucri election denial story, using primary sources. (Tr. 36: 15) Maricopa dangles this privilege in

---

[3] Phil Boas, *For 130 years, The Arizona Republic has grown and matured with our Western state*, ARIZONA REPUBLIC (May 17, 2020) found at https://www.azcentral.com/story/opinion/op-ed/philboas/2020/05/17/arizona-republic-history-mirrors-state-130-year-anniversary/5194412002/ (last visited Dec. 2, 2022)

[4] "CNN Digital Dominates All Competitors" CNN.COM, found at https://cnnpressroom.blogs.cnn.com/2022/01/26/cnn-digital-ratings-top-competitors-largest-digital-news-outlet-2021/ (last visited Dec. 2, 2022) (CNN claiming 144 million visitors per month, divided by 30, is approx. 4.8 million)

3

front of journalists as a reward for covering stories the way the government wants, and as something to withhold from journalists it wants to punish.

**2.0    It is Impracticable to Seek Reconsideration in the District Court**

Fed. R. App. P. 8 does not require seeking reconsideration in the District Court if it would be impracticable. *See* Fed. R. App. P. 8(a)(2)(A)(i). This is a time sensitive news situation that is developing hourly. A "breaking news story is one that conveys information the public wants quickly. If the story would lose value if it were delayed, it is a breaking news story." *See, e.g., ACLU of N. Cal. v. United States DOD*, 2006 U.S. Dist. LEXIS 36888, at *18 (N.D. Cal. May 25, 2006) (recognizing this in the FOIA context). "News delayed is news denied. To be useful to the public, news events must be reported when they occur." *State ex rel. Miami Herald Pub. Co. v. McIntosh*, 340 So. 2d 904, 910 (Fla. 1976).

It is impracticable if a district court does not have enough time to issue an opinion before relief is rendered meaningless. *See, e.g., Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 521 (6th Cir. 2021) (impracticability due to time constraints); *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (same); *Boston Parent Coalition. v. Sch. Comm. of Boston*, 996 F.3d 37, 44 (1st Cir. 2021) (same).

The District Court could not act fast enough. Appellants sued on Nov. 12. The Court held a hearing on Nov. 17 and ruled on Nov. 23. Even if the Court

reconsidered in 48 hours, it would be impracticable. "[U]nder the circumstances, it would serve little purpose to require another application to the district court." *McClendon v. Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996).

**3.0   The suit was filed timely**

The Appellees complain that the Appellants unreasonably delayed in seeking relief below. To seek relief before November 10 would have been premature.

> "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1149 (2009).

Actual injury was hypothetical until November 8, when the eyes of the world focused upon Maricopa County. If Appellants were similarly denied in Maine, where the election went off normally, they would also seek redress, but on a non-emergency basis. It could have waited *months* there. Rushing into court on Saturday, October 1, would have been premature. It was prudent to hold off until the important work of delivering the national news was done – as it was expected to be on November 8.

On November 8, voting machines failed and irregularities worthy of reporting came to the forefront. Appellants tried to first continue covering the news without the pass, but were rebuffed with increasing levels of hostility – even being barred

5

from areas accessible to the general public. (Tr. 85: 1-6)[5] Appellants tried to resolve this in person and in writing. (Dkt. 7-1; Tr. 45:6-14 & 51:3-6) However, the "appeal" process is has no temporal requirement, and appears to be no process at all.

On Nov. 10, the Appellants were not even allowed on the curtilage of the property, much less into press conferences. And that was the date that hostility escalated to threats of arrest. (Tr. 37: 3-5) At that point, the Constitutional crisis was ripe as a gloriously soft persimmon, and Appellants sued on November 12.

**4.0    The Merits**

According to the County, Conradson did not "avoid real or perceived conflicts of interest" and was not "free of associations that would compromise journalistic integrity or damage credibility." These are facially unconstitutional (or at least unconstitutional as applied) because they are completely muddy as to what is prohibited. What is a "perceived conflict?" Perceived by whom? In addition, the County is interpreting these so-called "regulations" differently from the very *source* of the regulations and how the journalism field interprets them. Maricopa has bespoke definitions that it uses to bar enemies. (Tr. 15-18) The government claimed that they are "really interested in serving journalists who are interested in selling the truth or at least pursuing the truth and that's always our goal" and espoused its views

---

[5] Jordan Conradson, "Breaking: TGP's Jordan Conradson and Rav's Ben Bergquam Removed From Maricopa Presser — Then Drone Follows Them From Premises (Video)," The Gateway Pundit, Nov. 10, 2022

6

of how it believes journalism should be practiced. (Tr. 66) This is improper.[8]

The District Court decided that since the Society of Professional Journalists' ("SPJ") Code of Ethics uses the term "conflicts of interests" that means that "the term has broadly understood meaning among practicing journalists." It may, but that meaning is not what Maricopa uses. Professor Gregg Leslie testified that "conflicts of interest" include, for example, reporting favorably on a publicly traded company while owning stock in that company. (Tr. 15-16) Not that a journalist should not disagree on facts or opinions with the government. The County cooked up their own interpretation – that reporters may never be politically involved, not even in prior races. The County showed that Conradson volunteered for a mayoral candidate in 2020.[9] The District Court's interpretation of "conflict of interest" thus is that if a reporter has *ever* advocated for a candidate, they can be banned as "conflicted" from reporting on elections *at all*.

The District Court held that since the Arizona Senate requires that journalists "must not be engaged in any lobbying or advocacy, advertising, publicity or promotion of any individual, political party, group, corporation, organization or a federal, state or local government agency …" and Maricopa's actions and regulations are identical. Wrong. The Senate rules are far clearer, and the record

---

[8] The correct answer under the First Amendment is "there is no such line, being opinionated and targeted is every man's right."
[9] The candidate, Merissa Hamilton, was not on the ballot this year.

showed that Mr. Conradson met those standards and was issued a Senate pass. (Tr. 35) If the standards are identical, then why are there two different results?

Requiring that journalists be "free of associations that would compromise journalistic integrity or damage credibility" is equally infirm. The District Court held that since these criteria have an analogue in the SPJ's Code of Ethics, they are valid. (Dkt. 27 at 9) However, what this means to journalists is different from the ad-hoc County definition. The unrebutted expert testimony was that "associations" would be if, for example, a journalist was also a lobbyist. (Tr. 16) This is consistent with the *MacIver* case in which a think tank sought to be treated as a journalistic outlet. *MacIver at* 611. The District Court inexplicably agreed with the County that "associations" meant that they were not allowed to have political views or *prior* associations with political candidates who were not even on the 2022 ballot.

Appellees' regulations lack reasonably specific criteria or objective factors. They claim to rely on the SPJ, but they were just using SPJ language and interpreting it to give them discretion to ban anyone at all. (Dkt. 27 at 8; Tr. 70:7-23)

Appellees argued that they had "the right to set up criteria for ethical reporting." (Tr. 83:15-25) Appellees' witness, Fields Moseley, said that "[h]e doesn't seek the truth." (Tr. 72:13, Speaking of Appellant Conradson) The government does not get to decide who is "seeking the truth." Under our Constitution, that's the marketplace's job to decide.

The government may not exclude media unless the government deems them "accurate." If the government gets to decide that, then it becomes the "ministry of truth" out of 1984, not a neutral party in the quest for truth. What the government wants is *stenography* and not *journalism*. If the government gets to decide who reports *the truth according to the government*, then why have a press at all? The government can just publish press releases.

**5.0    Irreparable Injury**

Appellees argued that there is no harm in not being able to attend press conferences – just watch it on livestream. (Resp. at 4) But not all conferences are livestreamed, and journalists watching the livestream can't ask questions. (Tr. 46:4-20, 54:3-8, 68:14-23) How is that "good enough?" Why have press conferences at all if everyone can just watch a speech over livestream? Press licensing "would make it easy for dictators to control their subjects." *Grosjean v. American Press Co.*, 297 U.S. 233, 240 (1936). Maricopa County thinks it has a workaround. It cannot stop opposition media from *publishing* through licensing, but it gags disfavored media's attempts to serve as a watchdog on government by licensing *newsgathering*. That gag must be removed.

**6.0    Balance of Equities**

The County is violating the First Amendment. This is a hot news situation that requires immediate relief. The County will suffer no harm if one more reporter enters

9

the press conferences.  No "harm" came from TGP reporting for years prior, except one Commissioner was forced to resign after TGP reported the truth.  The fact that the government claims that TGP is not "good at journalism" or does not "seek the truth" sounds like Donald Trump trying to throw out Jim Acosta because he didn't like his reporting.  The law didn't tolerate that either.  *Cable News Network, Inc. v. Trump*, No. 18-2610 (D.D.C. Nov. 16, 2018).  The law won't tolerate it here either.

## CONCLUSION

Enforcing a press-access licensing scheme in a viewpoint discriminatory manner uses the levers of government power shape public opinion.  This type of conduct poses an immediate threat to any notion of a democratic society.  Denial of press credentials as retaliation for disfavored reporting requires swift reversal.

Date: December 2, 2022.

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza

David S. Gingras
GINGRAS LAW OFFICE, PLLC

*Attorneys for Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 27 and Circuit Rule 27-1 because this brief contains 2,486 words and 10 pages, excluding the documents listed at Fed. R. App. P. 27(a)(2)(B) and 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: December 2, 2022.　　　　　　　RANDAZZA LEGAL GROUP, PLLC

　　　　　　　　　　　　　　　　　　/s/ Marc J. Randazza
　　　　　　　　　　　　　　　　　　Marc J. Randazza

　　　　　　　　　　　　　　　　　　David S. Gingras
　　　　　　　　　　　　　　　　　　GINGRAS LAW OFFICE, PLLC
　　　　　　　　　　　　　　　　　　*Attorneys for Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

|  |  |
|---|---|
| Date: December 2, 2022. | RANDAZZA LEGAL GROUP, PLLC |
|  | /s/ Marc J. Randazza |
|  | Marc J. Randazza |
|  | David S. Gingras |
|  | GINGRAS LAW OFFICE, PLLC |
|  | *Attorneys for Appellants* |