No. 22-16826

*In the*
# UNITED STATES COURT OF APPEALS
*for the*
# NINTH CIRCUIT

---

TGP COMMUNICATIONS, LLC, D/B/A, THE GATEWAY PUNDIT, AND JORDAN CONRADSON,

*Plaintiffs-Appellants,*

v.

JACK SELLERS, THOMAS GALVIN, BILL GATES, CLINT HICKMAN, STEVE GALLARDO, STEPHEN RICHER, REY VALENZUELA, SCOTT JARRETT, MEGAN GILBERTSON, AND MARCUS MILAM

*Defendants-Appellees.*

---

On Appeal from the
United States District Court for the District of Arizona
No. 2:22-cv-01925-JJT
The Honorable John J. Tuchi

---

**BRIEF OF *AMICUS CURIAE* ST. MICHAEL'S MEDIA, INC. IN SUPPORT OF TGP COMMUNICATIONS, LLC AND JORDAN CONRADSON'S APPEAL SEEKING REVERSAL OF THE TRIAL COURT'S ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

---

Kathleen H. Klaus, *Admission Pending*
MADDIN HAUSER ROTH & HELLER, P.C.
28400 Northwestern Highway, 2nd Floor
Southfield, MI 48034
Tel: 248-359-7520
kklaus@maddinhauser.com
Attorneys for St. Michael's Media, Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF THE IDENTITY OF THE *AMICUS CURIAE,* ITS INTEREST IN THE CASE AND THE SOURCE OF AUTHORITY TO FILE ........................ iii

CORPORATE DISCLOSURE STATEMENT ....................................................... iv

FRAP 29(a)(4)(E) STATEMENT ................................................................. v

ARGUMENT ............................................................................................. 1

A.  Religious media has been a vital agent for change throughout American history ............................................................................................................. 1

B.  Religious media remains an important part of a free press ................................. 3

C.  The First Amendment must not be diminished by the government's assurances that it is acting for a greater good ......................................................... 5

CONCLUSION ........................................................................................ 7

# TABLE OF AUTHORITIES

## Federal Case Law

*Buck v. Gordon,* 429 F. Supp. 3d 447 (W.D. Mich. 2019)..........................................4

*Fulton v. City of Philadelphia,* 141 S.Ct. 1868 (2021)...............................................4

*New York Times Co. v. U.S.,* 403 US 713 (1971) ......................................................7

## Federal Rules of Appellate Procedure

FRAP 26.1.......................................................................................................................v

FRAP 29(a)(2)............................................................................................................. iv

FRAP 29(a)(4)(E) ....................................................................................................... vi

## Publications

"Report I of the 40th Statewide Grand Jury," Office of the Attorney General, Commonwealth of Pennsylvania, July 27, 2018 at p. 215 .....................................4

Bruce J. Evenson, "The Evangelical Origins of the Muckrakers," AMERICAN JOURNALISM, Vol. IV, No. 1 (1989)........................................................................3

Bruce Walker, "Catholic Adoption Agency Sues Michigan for Discrimination," ChurcMilitant.com (April 17, 2019) ....................................................................4

*Media and Religion in American History,* William D. Sloan, ed, p.115 (2000) .......2

*Publick Occurrences, Both Forregin and Domestick,* was published in 1690..........2

Special Report: Murder in the Diocese of Buffalo?" (September 19, 2018).............5

William D. Sloan, "Chaos, Polemics and America's First Newspaper," JOURNALISM QUARTERLY, Vol. 70, No. 3 (1993).....................................................................2

## STATEMENT OF THE IDENTITY OF THE *AMICUS CURIAE,* ITS INTEREST IN THE CASE AND THE SOURCE OF AUTHORITY TO FILE

St. Michael's Media, Inc. ("SMM") was founded in 2006 as a Michigan not for profit corporation that operates an on-line media company focused on issues involving the Roman Catholic Church. SMM has an interest in this case because it would be denied a press pass under the credentialing procedures implemented by Maricopa County due to SMM's "conflict of interest" and "associations that would compromise journalistic integrity and damage credibility," under Maricopa County's interpretation and application of its policy. As a religious media company, SMM has an interest in ensuring that access to press conferences and similar events sponsored by government agencies are open to all members of the press, regardless of perceived biases or viewpoints. SMM's authority to file this brief is based on the consent of all parties to this appeal, as provided for in FRAP 29(a)(2).

# CORPORATE DISCLOSURE STATEMENT
# OF ST. MICHAEL'S MEDIA, INC.

St. Michael's Media, Inc., pursuant to FRAP 26.1, hereby states that it has no parent corporation and that no publicly-held corporation owns ten percent or more of its stock.

# FRAP 29(a)(4)(E) STATEMENT

This brief was authored by SMM's counsel Kathleen H. Klaus. No attorney for any party authored this brief, in whole or in part. No party or counsel for any party contributed money that was intended to fund preparing or submitting this brief. No person, other than SMM, Ms. Klaus and her law firm contributed money that was intended to fund the preparation and submission of this brief.

# ARGUMENT

SMM is a news media organization that reports on national and international matters involving the Roman Catholic Church and on political issues that implicate the teachings of the Catholic Church. Its views are unapologetically and necessarily biased in favor of the Catholic Church's teachings. This does not make SMM an illegitimate news organization, unworthy of participating in public press conferences. Under any tenable rendering of the First Amendment, SMM has an inviolable right to participate in public newsgathering that deserves the same degree of protection as SMM's right to publish. Because Maricopa County's credentialing criteria unjustly impairs that right, SMM supports the arguments identified in §II of Appellants' Opening Brief.

### A. Religious media has been a vital agent for change throughout American history.

SMM does not accept money for stories or media coverage, pay sources or engage in any other conduct that would create a "conflict of interest" in its reporting, as that term is generally understood by media organizations. But Maricopa County's credentialing policy allows County officials to bar members of the press that have a "perceived conflict of interest" or that have "associations" that would "damage credibility." *See* 3-ER-426-427. Maricopa County interprets its policy as permitting it to bar journalists who are open about their political affiliations or who are known to advocate for or against an issue or person. *See* 2-ER-61:17-21; 2-ER-93:1-23.

The religious media, including SMM, fits squarely within this category. Allowing government agencies to prohibit members of the religious media from participating in press conferences because of their acknowledged bias, is censorship. The fact that the censorship takes place at the newsgathering stage rather than the publication stage does not make it less insidious. It is also an afront to the important role the religious media has played in American history.

American's first newspaper, *Publick Occurrences, Both Forregin and Domestick,* was published in 1690 by an ardent Anabaptist whose decision to start a paper was "influenced greatly by strong religious motivations." *See* William D. Sloan, "Chaos, Polemics and America's First Newspaper," JOURNALISM QUARTERLY, Vol. 70, No. 3 (1993), p. 667. *Publick Occurrences* was suppressed by the colonial government after its first issue, because it criticized the immoral treatment of French prisoners of war by British allies. *Id* at p. 671. The publisher's bias colored his reporting but also made the reporting compelling and reflected a different truth concerning the government's conduct.

Religious media likewise brought unique insight into the fight against slavery:

> Most of the criticisms of slavery in the religious periodicals differed from the concerns expressed in the secular press because they emphasized the immorality of the South's 'peculiar institution' rather than the political or legal arguments that could be raised against it.

*Media and Religion in American History,* William D. Sloan, ed, p.115 (2000). A century later, the muckraking journalists were a catalyst for important social and

economic changes, an impetus founded on the journalists' deeply held and expressed religious beliefs. *See* Bruce J. Evenson, "The Evangelical Origins of the Muckrakers," AMERICAN JOURNALISM, Vol. IV, No. 1 (1989), p. 5. Again, the bias and advocacy of the religious media offered a view of important political and social issues that was not found in the secular press.

Maricopa County's policy would bar the religious media from press conferences because of the religious media's perceived bias and advocacy, but this alleged bias has been vital to the public discourse throughout the country's history. The religious media's bias thus does not make it unworthy to participate in the public discourse, its bias makes it necessary for a full, robust discussion of important social and political issues.

### B. Religious media remains an important part of a free press.

SMM fits within the honorable tradition of bringing a moral truth to political power. In Church Militant's home state of Michigan, for example, Attorney General Dana Nessel disqualified St. Vincent Catholic Charities ("Catholic Charities") from providing public adoption services because Catholic Charities refused to perform home studies for gay, lesbian or transgender persons. This lead to litigation and (ultimately) a victory for St. Vincent's in a district court decision, *Buck v. Gordon,* 429 F. Supp. 3d 447 (W.D. Mich. 2019) that was in essence affirmed by the United States Supreme Court in *Fulton v. City of Philadelphia,* 141 S.Ct. 1868 (2021).

SMM covered this story from its "biased" Catholic perspective and advocated against the new government policy. *See* Bruce Walker, "Catholic Adoption Agency Sues Michigan for Discrimination," ChurcMilitant.com (April 17, 2019), [https://www.churchmilitant.com/news/article/catholic-foster-care-adoption-agency-sues-state-of-michigan](https://www.churchmilitant.com/news/article/catholic-foster-care-adoption-agency-sues-state-of-michigan), (last visited 12/12/22). Under the credentialing restrictions at issue in the instant case, the Michigan Attorney General could have barred SMM from a press conference in which the Attorney General discussed her policy and the reasons for it, because SMM's viewpoint demonstrated a bias that would, in her view, damage its credibility. But it is precisely that bias that was necessary to disseminate the truth in the case: the Attorney General's policy was illegal and a violation of the Catholic Charities' First Amendment rights. SMM's biased (as defined by Maricopa County) reporting furthered the dissemination of truth.

SMM's conflict of interest would also bar it from access to press conferences concerning criminal investigations that implicate corruption in the Catholic Church. Law enforcement is at times complicit in covering up matters that would result in negative press for the Catholic Church. *See e.g.* "Report I of the 40th Statewide Grand Jury," Office of the Attorney General, Commonwealth of Pennsylvania, July 27, 2018 at p. 215 (reporting that District Attorney of Beaver County, PA advised Diocese of Pittsburgh that "in order to prevent unfavorable publicity," he had "halted

all investigations into similar incidents involving young boys.") SMM covers these stories, including a series of reports on a case involving a whistleblower priest who was found shot to death the day before he was going to report on sex abuse and embezzlement in the Diocese of Buffalo. "Special Report: Murder in the Diocese of Buffalo?" (September 19, 2018), https://www.churchmilitant.com/news/article/special-report-murder-in-the-diocese-of-buffalo (last visited 12/12/22).

SMM's biases, associations and advocacy provide vital insight that is necessary for a full understanding of the truth concerning the matters on which it reports. SMM should not have to disguise its biases or temper its advocacy in order to gain admission to government press conferences on issues that are important to its readers. In crafting a policy that allows it to bar members of the press it deems unworthy because of perceived biases or advocacy, Maricopa County has shut out a vital organ of a free press.

### C. The First Amendment must not be diminished by the government's assurances that it is acting for a greater good.

Maricopa County cites to the heated debates over election integrity as its reason for limiting access to those reporters whom County officials determine "are interested in selling [sic] the truth or at least pursuing the truth[.]" *See* 2-ER-86:15-23; 2-ER-89:18–24. *New York Times Co. v. U.S.,* 403 US 713 (1971), was decided at a time of similar political divisiveness and stands as a model of federal courts' role

in protecting our fundamental rights against infringement by a government that insists it is acting for a greater good.

In protecting the press from government intrusion, Justice Hugo Black resorted to first principles, and reminded us that the Founders provided Americans with the right to a free press "as one of the great bulwarks of liberty" and one that "shall be inviolable." *New York Times,* 403 US at 716. The "Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy. [...] The press was protected so that it could bare the secrets of government and inform the people. Only a free and unrestrained press can effectively expose deception in government." *New York Times,* 403 US at 717. While Justice Black was speaking to the efforts of the government to prohibit the publication of information it did not want disclosed, the right does not lose its "inviolable" nature in the present context where the government wants to decide which members of the press are "truth tellers" worthy of access to officials. The debate over serious matters that are "vital to national health," like elections, must be subjected to "uninhibited robust debate," even if that debate is embarrassing to the "powers that be." *New York Times,* 403 US at 724 (Douglas, J., conc). There is nothing about the current political climate that justifies barring advocacy journalists, like the religious media, from government press conferences.

# **CONCLUSION**

It appears that Maricopa County modeled its credentialing criteria on a policy that has been widely used and disseminated. *See* 1-ER-8-9. SMM, for itself and on behalf of all religious media, urges the Court to find the policy unconstitutional as written and as applied in this case and to stop the government's illegal restriction of access to press conferences.

Respectfully submitted,

MADDIN HAUSER ROTH & HELLER, P.C.

*/s/ Kathleen H. Klaus*
Kathleen H. Klaus, *Admission Pending*
Attorneys for St. Michael's Media, Inc.
28400 Northwestern Highway, 2nd Floor
Southfield, MI 48034
Tel: 248-359-7520
kklaus@maddinhauser.com

Dated: December 14, 2022