# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

TGP COMMUNICATIONS, LLC, a Missouri limited liability company, DBA The Gateway Pundit; JORDAN CONRADSON, an individual,

Plaintiff-Appellant,

v.

JACK SELLERS, et. al.,

Defendant-Appellees.

On Appeal from the
United States District Court for the District of Arizona
No. 2:22-cv-01925-JJT
The Honorable John J. Tuchi

BRIEF OF *AMICUS CURIAE* THISISRENO.COM

Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

# CORPORATE DISCLOSURE STATEMENT

CONRAD COMMUNICATIONS, LLC, d/b/a THIS IS RENO is a Nevada Limited Liability Company.  Dr. Conrad is the sole owner and managing member of CONRAD COMMUNICATIONS, LLC. No other company/corporation has any interest in CONRAD COMMUNICATIONS, LLC. (1) CONRAD COMMUNICATIONS, LLC does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in CONRAD COMMUNICATIONS, LLC.

# **TABLE OF CONTENTS**

I. INTEREST OF AMICUS CURIAE …………………………….. 1

II. SUMMARY OF THE ARGUMENT …….………..……….. 4

III. ARGUMENT ..……....………………………………..………… 5

IV. CONCLUSION …………………………...……..……....…… 9

V. CERTIFICATE OF COMPLIANCE …………..….……........ 10

VI. CERTIFICATE OF AUTHORSHIP ………………………….. 11

VII. CERTIFICATE OF SERVICE ……………..……………….. 12

# TABLE OF AUTHORITIES

## CASES

*Citizens United v. Fed. Election Comm'n*
    558 U.S. 310, 327, 130 S. Ct. 876, 891 (2010) …………………..... 8

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*
    473 U.S. 788, 799, 800 (1985) …………………..………………..…. 8

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*
    551 U.S. 449, 469, 127 S. Ct. 2652, 2666 (2007) …………………. 8

*Houchins v. KQED, Inc.*
    438 U.S. 1, 16, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978) …………... 7

*John K. Maciver Inst. for Pub. Policy, Inc. v. Evers*
    994 F.3d 602 (7th Cir. 2021) ……………………………………... 6

*New York Times Co. v. Sullivan*
    376 U.S. 254, 269–270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) …….. 9

*O'Grady v. Superior Court*
    139 Cal.App.4th 1423, 1457, 44 Cal.Rptr. 3d 72, 97. (2006) ……... 6

*Reed v. Town of Gilbert, Ariz,*
    135 S. Ct. 2218, 2226 (2015) …………………………………..… 8

*Rosenberger v. Rector & Visitors of Univ. of Va.*
    515 U.S. 819, 829 (1995) ……………………………………… 4

*Toll v. Wilson*
    453 P.3d 1215 (Nev. 2019) ……………………………………… 5

## STATUTES

NRS 49.275 …………………………………………………………… 5

# I. INTEREST OF AMICUS CURIAE

Dr. Robert Conrad is a journalist and the publisher, editor and owner of ThisisReno.com, a community-focused online news source for the greater Reno, Nevada area. Dr. Conrad has a keen interest in this case and many others like it as he is actively engaged in reporting on issues involving the actions of local government in the Reno, Nevada area - including investigative reporting on issues involving corruption, spin, and graft among local officials.

In response to his efforts to report on such issues, Dr. Conrad is a frequent target of the ire of powerful local officials who would prefer that they be able to conduct the government's business in private or that simply do not appreciate that his media outlet does not regurgitate public relations communiques from official sources.

Dr. Conrad also seeks to inform the Court that exclusion of journalists from press briefings on the basis of political viewpoint or as a retaliatory measure is also being utilized in Nevada. Dr. Conrad is frequently and pejoratively called "just a blogger" by local officials in response to his work. This is in spite of the fact that This Is Reno has received multiple national and statewide awards for its work. In addition,

Dr. Conrad completed a multi-year dissertation on news media coverage and is considered an expert in his field. The issues in this case are of great concern to Dr. Conrad because of the often critical and unflattering nature of Dr. Conrad's fact-based reporting on local officials and government entities in the Reno, Nevada area.

In November of 2022, Nevada Governor Elect Joe Lombardo held a press conference at a high school in Las Vegas, but he excluded from the press conference reporters from two local news sources, Las Vegas Sun and the Nevada Current, both of which were critical of Lombardo during the run up to the election, were excluded from the event.[1] Similarly, in the Reno area, This Is Reno has been excluded from official press briefings by public relations professionals and political subdivisions of the State of Nevada merely because these people and entities appear to believe they will garner more favorable news coverage from other, less skeptical news sources. Such practices are an affront to the First Amendment, especially in light of the fact that news media sources, particularly those that are actually locally owned and operated within their communities, are

---

[1] See *Some media barred as Nevada governor-elect pledges openness*, by Ken Ritter, accessed on December 10, 2022 at: https://apnews.com/article/las-vegas-nevada-newspapers-07edd32ae68d 3955a8065eb81b9fd869

becoming exceedingly rare. Most news media outlets in the Reno area are owned and operated by out-of-state large corporate entities, despite their own downsizing, cost-cutting, and outright closures, and in recent decades have focused more on content from their parent networks while turning their backs on critical local news coverage. This Is Reno, for example, is the only news source in its area to regularly watch and cover local government meetings. It is, therefore, alarming, that a local government entity can, with the flick of a pen, summarily decide—based on tone, viewpoint, or "associations" — to deny a press pass to a journalist seeking to report on that government's activities. Such practices are antithetical to the First Amendment and the historic role of the free press in America.

I.F. Stone is one of the most lauded figures in American journalism's history, was notoriously progressive in his politics, and his independent weekly newsletter was published from the mid-1950s through 1971. He was reportedly blacklisted by the mainstream journalism industry due to his perspectives yet remains a pivotal figure in the annals of the American free press. His contributions and his example as a journalist remain relevant to today's treatment of the media.

> There are many ways to punish a reporter who gets out of line; if a big story breaks at 3 A.M., the press office may

neglect to notify him while his rivals get the story. There are as many ways to flatter and take a reporter into camp—private off-the-record dinners with high officials, entertainment at the service clubs…. No bureaucracy likes an independent newspaperman. Whether capitalist or communist, democratic or authoritarian, every regime does its best to color and control the flow of news in its favor.[2]

Such a statement is highly relevant today, after a half century, in the United States and in this case, in Maricopa County, Arizona - even if it is now outlets on the right like the Gateway Pundit that are the target of exclusionary practices.

All parties consented to the filing of this brief without a motion under Fed. R. App. P. 29(a) and Ninth Circuit Rule 29-3.

## II.  SUMMARY OF THE ARGUMENT

Denial of a press pass to a journalist on the basis of the government's assessment of the reputation and perceived veracity, or perceived political bias or associations of a journalist, is facially unconstitutional.  The procedure established by Maricopa County to obtain a press pass is a pretext for the government to engage in viewpoint discrimination, which is unconstitutional on its face. *Rosenberger v. Rector & Visitors of Univ. of Va.* 515 U.S. 819, 829 (1995).

---

[2] I.F. Stone, *A Word About Myself* (July 1963). http://ifstone.org/biography.php

# III. ARGUMENT

The issue of whether a person is a reporter usually arises at the state court level in the context of a claim of reporter's privilege. The Supreme Court of Nevada recently addressed this issue in a case involving application of Nevada's press shield statute, in NRS 49.275, which is one of the most robust of its kind in the nation. *Toll v. Wilson*, 453 P.3d 1215 (Nev. 2019), involved a defamation action by Nevada celebrity brothel owner Lance Gilman against local Virginia City based online journalist Sam Toll. Toll sought protection from revealing his confidential sources under Nevada's press shield statute, and Gilman argued that the statute should not apply to Toll because Toll was a "blogger," and not a reporter. The Nevada Supreme Court held that Toll was a reporter under the shield statute, because he "reports various public events, opinions, and current news in Virginia City. This qualifies him as a reporter." *Id.* at 1218. Here, the Nevada Supreme Court straightforwardly answered the call of the question without the need for a viewpoint-based inquiry.

In the context of inquiries into whether a press shield law is properly invoked, other state courts have also been careful to not permit

the coloring of such an inquiry with questions of what is real journalism and what is not.

> We decline the implicit invitation to embroil ourselves in questions of what constitutes "legitimate journalis[m]." The shield law is intended to protect the gathering and dissemination of news, and that is what petitioners did here. We can think of no workable test or principle that would distinguish "legitimate" from "illegitimate" news. Any attempt by courts to draw such a distinction would imperil a fundamental purpose of the First Amendment, which is to identify the best, most important, and most valuable ideas not by any sociological or economic formula, rule of law, or process of government, but through the rough and tumble competition of the memetic marketplace.

*O'Grady v. Superior Court*, 139 Cal.App.4th 1423, 1457, 44 Cal.Rptr. 3d 72, 97. (2006).

The common-sense approach of the Nevada Supreme Court and the Court of Appeal of California may be contrasted with the 7th Circuit's decision in *John K. Maciver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602 (7th Cir. 2021). Following *Maciver*, the exclusion of a journalist from a press conference may be based on the government wading into a muddy "reasonableness" inquiry, where viewpoint-based restrictions may be imposed based on veiled distinctions drawn from the "purpose served by the forum." While the 7th Circuit states that there is "nothing inherently viewpoint-based about these criteria," criteria similar to those utilized by

Maricopa County, they are inherently subjective and are ripe for abuse by politicians seeking to control what information makes its way into the marketplace of ideas. While the *Maciver* Court is certainly correct that neither the First Amendment nor the Fourteenth Amendment grants the media a right of access to different or greater than the public generally (Id. at 612 quoting *Houchins v. KQED*, Inc., 438 U.S. 1, 16, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978)) the denial of a press pass under Maricopa County's rules is tantamount to a determination by the state that Jordan Conradson is in fact not a member of the press.

Many of the inquiries required in Maricopa County's procedure are not even issues of fact, but are political issues, such as whether a journalist "avoids real or perceived conflicts of interest" and is "free of associations that would compromise journalistic integrity or damage credibility." There is no objective "truth," for these questions, but rather varying opinions and perspectives about which reasonable people may (and do) disagree. Such an inquiry requires the government to evaluate the political inclinations and "associations" of any particular news source that would be eligible to participate in press conferences - and will inevitably lead to suppression of journalism that is critical of the party line, as I.F. Stone

warned. Such a subjective test as the one imposed by Maricopa County in its press pass scheme is entirely unworkable lest the government start to actively engage in determinations involving which and whose opinions on the political spectrum are valid and invalid.

While the First Amendment does not provide a right of free and unconditional access to all government properties or events, (*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799800 (1985)), it does prevent the government from engaging in viewpoint based discrimination unless narrowly tailored to serve a compelling government interest. *Reed v. Town of Gilbert, Ariz*, 135 S. Ct. 2218, 2226 (2015). Consistent messaging from government-approved journalists is not a compelling government interest.

This Court should foreclose the government from wading into questions related to what is and what is not legitimate journalism: "First Amendment standards, ... 'must give the benefit of any doubt to protecting rather than stifling speech.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 327, 130 S. Ct. 876, 891 (2010) quoting *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469, 127 S. Ct. 2652,

2666 (2007) citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 269–270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

## IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully requests that the Court rule in favor of Appellants and find that Maricopa County's press pass evaluation procedure violates the First Amendment.

Respectfully submitted this  Dec 15, 2022

By:   /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

# V. CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,110 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Google Docs, in Garamond 15-point font.

Respectfully submitted this  Dec 15, 2022

By:___/s/ Luke Busby, Esq._____
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for Dr. Robert Conrad*

# VI. CERTIFICATE OF AUTHORSHIP

The undersigned counsel affirms that no counsel for any party authored this brief in whole or in part; no party or party's counsel contributed money to fund preparation or submission of the brief; and no one but Dr. Conrad contributed money to fund the preparation or submission of this brief.  See Fed. R. App. P. 29(a)(4)(E).

Respectfully submitted this  Dec 15, 2022

By:    /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for Dr. Robert Conrad*

# VII.  CERTIFICATE OF SERVICE

I hereby certify that on Dec 15, 2022 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted this Dec 15, 2022

By: __/s/ Luke Busby, Esq._____
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com