No. 22-16826
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

TGP COMMUNICATIONS, LLC, D/B/A THE GATEWAY PUNDIT,
AND JORDAN CONRADSON,

*Plaintiffs-Appellants*,

v.

JACK SELLERS, THOMAS GALVIN, BILL GATES, CLINT HICKMAN,
STEVE GALLARDO, STEPHEN RICHER, REY VALENZUELA, SCOTT
JARRETT, MEGAN GILBERTSON, AND MARCUS MILAM,

*Defendants-Appellees*.

ON APPEAL FROM
United States District Court for the District of Arizona
No. 2:22-cv-01925-JJT
The Honorable John J. Tuchi
_____

BRIEF OF THE STANTON FOUNDATION FIRST AMENDMENT CLINIC
AT VANDERBILT LAW SCHOOL AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFFS-APPELLANTS
_____

Jennifer Safstrom
Stanton Foundation First Amendment Clinic
Vanderbilt Law School
131 21st Ave South
Nashville, TN 37203-1181
(615) 322-4964
jennifer.safstrom@vanderbilt.edu

*Counsel for Amicus Curiae*

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Stanton Foundation First Amendment Clinic at Vanderbilt Law School, by and through its undersigned counsel, hereby certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

INTEREST OF AMICUS CURIAE ....................................................................1

INTRODUCTION ................................................................................................3

ARGUMENT.........................................................................................................4

    1.  The District Court incorrectly concludes Maricopa County's denial is not content- or viewpoint-based. ......................................5

    2.  The District Court and Defendants-Appellees mistakenly rely on Seventh Circuit precedent...........................................................8

    3.  The District Court erred in concluding that remote-only viewing access to Maricopa County's press conferences constituted a de minimis harm...........................................................................................10

CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Alaska Landmine, LLC v. Dunleavy*,
  514 F. Supp. 3d 1123 (D. Alaska 2021), ................................. 10, 11, 12

*Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) ................................. 7

*Brandborg v. Bull*, 276 F. App'x 618 (9th Cir. 2008) ............................. 5

*Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Schs.*,
  457 F.3d 376 (4th Cir. 2006) ................................................................ 4

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ............................ 3

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) ............................ 12

*John K. MacIver Institute for Pub. Policy, Inc. v. Evers*,
  994 F.3d 602 (7th Cir. 2021) ............................................................ 8, 9

*Koala v. Khosla, 931 F.3d 887, 902* (9th Cir. 2019) ............................. 5

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) .................... 7

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*,
  138 S. Ct. 1719 (2018) ......................................................................... 7

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
  945 F. Supp. 1355 (D. Or. 1996) ......................................................... 6

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ...................................... 4

*Seattle Mideast Awareness Campaign v. King Cnty.*,
  781 F.3d 489 (9th Cir. 2015) ............................................................... 6

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) .................................... 4

**Rules**

Federal Rules of Appellate Procedure 29 ................................................ 1
Federal Rules of Appellate Procedure 32 ................................................ 1
Cir. R. 29-2 .............................................................................................. 1
Cir. R. 26.1 .............................................................................................. 2
Cir. R. 29(a) ............................................................................................. 1

# INTEREST OF AMICUS CURIAE

The Stanton Foundation First Amendment Clinic at Vanderbilt Law School ("Vanderbilt First Amendment Clinic" or "Clinic") introduces students to civil litigation implicating the First Amendment rights of persons and organizations. The Clinic defends and advances freedoms of speech, press, assembly, and petition through court advocacy, serves as an educational resource on issues of free expression and press rights, and provides law students with the real-world practice experience to become leaders on First Amendment issues.

The Clinic engages in advocacy and representation on First Amendment issues across the country. Accordingly, the Clinic has an interest in promoting the sound interpretation of the First Amendment in a way that preserves the important freedoms of petition, assembly, and association afforded by the U.S. Constitution and subsequent court precedents.

The Clinic files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, and all parties to the appeal have consented to the filing of this brief.

Counsel for the Appellant did not author the brief in whole or in part. Amicus curiae did not receive financial support to fund the preparation or submission of this brief from the parties or counsel to this litigation. No other

individual(s) or organization(s) contributed financial support intended to fund the preparation or submission of this brief.

## INTRODUCTION

Jordan Conradson, a reporter for The Gateway Pundit, also known by the trade name of TGP Communications, LLC (together, "Plaintiffs" or "Plaintiffs-Appellants"), sought a press pass to attend press briefings about the election from Maricopa County officials (collectively, "Defendants" or "Defendants-Appellees"). Despite the publication's existence for nearly a decade and its circulation to millions of individuals each day, Plaintiffs-Appellants were denied a press pass under the new standard adopted by Defendants-Appellees.

This case raises significant considerations regarding the application of the temporary restraining order and preliminary injunction standard, which provides imminent relief to litigants during the pendency of the dispute to prevent irreversible injury. Plaintiffs-Appellants are entitled to injunctive relief because they demonstrated (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) that granting "an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal citation omitted).

Plaintiffs-Appellants are likely to succeed on the merits because the government's denial is content- and viewpoint-based. Such limitations "are presumptively unconstitutional and may be justified only if the government proves

5

that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The government's proposed standard also vests "governmental officials with boundless discretion over access to the forum [that] violates the First Amendment." *Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Schs.*, 457 F.3d 376, 386 (4th Cir. 2006).

Plaintiffs-Appellants will also suffer irreparable harm if injunctive relief is denied during the pendency of litigation, as the current remote-only access policy—which applies only to TGP Communications and its staff—does not provide equivalent access as granted to other members of the press and constitutes more than a *de minimis* harm. Furthermore, the balance of equities and the public interest also weigh in favor of granting preliminary relief.

## ARGUMENT

The District Court erred in three critical respects in denying Plaintiffs-Appellants' motion for injunctive relief. First, the court erred in analyzing the content- and viewpoint-based nature of Defendant-Appellees' restrictions. Order, 11–15, ECF No. 27. Second, the trial court's reliance on Seventh Circuit precedent is erroneous. Finally, the court wrongly concluded that the harm experienced by Plaintiffs-Appellants was *de minimis*. On appeal, this Court applies de novo review in assessing these legal conclusions. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

1. **The District Court incorrectly concludes Maricopa County's denial is not content- or viewpoint-based.**

The government's denial of Plaintiff-Appellants' press credentials is a self-proclaimed content- and viewpoint-based restriction.[1] This Court relied on multiple statements by the government that, when taken together, permitted "an inference that members of the general public who lived in the project area but who had not previously opposed the Forest Service's chosen alternative were admitted, but Appellees, who also lived in the project area, were excluded by [the defendant] based on their viewpoint." *Brandborg v. Bull*, 276 F. App'x 618, 620 (9th Cir. 2008) (remanding for further consideration of First Amendment claims).

Maricopa County's statements allow for a similar conclusion to be drawn here.[2] Defendant-Appellees have repeatedly tied the criteria set forth in its press

---

[1] Although the District Court's analysis proffers that "[t]he forums to which Plaintiffs seek access in this case are nonpublic County facilities," Order, 12, ECF No. 27, a press event might be more appropriately considered as a limited or designated public forum because "the government has intentionally opened [it] to certain groups or topics." *Koala v. Khosla*, 931 F.3d 887, 902 (9th Cir. 2019) (considering First Amendment claim brought by student journalists). This distinction does not appear to affect the court's analysis, as it reasoned "'[t]he label doesn't matter, because the same level of First Amendment scrutiny applies to all forums that aren't traditional or designated public forums.'" Order, 12, ECF No. 27 (citing *Koala*, 921 F.3d at 900 n.6).

[2] Defendants-Appellees, at least at this stage, have failed to present any evidence that Plaintiffs-Appellants pose a security threat. Rather, they rely on the viewpoint espoused in the publication and how third parties may react to its dissemination. *See* Defs.' Resp. Corrected Emergency *Ex Parte* Mot. TRO 12–13, ECF No. 17.

7

pass policy to an analysis that focuses on the content and viewpoint adopted in Plaintiffs-Appellants' reporting and personal communications. *See, e.g.*, Order, 4, ECF No. 27 (Defendants-Appellees' witness contending reporter does not "seek the truth" as denoted by "his social media or his articles"); Defs.' Resp. Corrected Emergency *Ex Parte* Mot. TRO 5, ECF No. 17 ("[E]ven before he received a response to his application, he stated in an article that Maricopa County was 'covering its tracks ahead of the 2022 General Election'" and referred to the County as the "Ministry of Truth" in an allusion to George Orwell's *1984*); Defs.' Resp. 6, ECF No. 17 ("Mr. Conradson then expresses an opinion about the news report or press release and . . . uses inflammatory and/or accusatory language.").

Moreover, the trial court fails to adequately account for evidence of animus, including Plaintiffs-Appellees' prior reporting that cast Maricopa County in a negative light, both with respect to the former County Supervisor Steve Chucri and the press pass policy; these articles predate the denial and provide a valid basis for

---

"Excluding speech based on 'an anticipated disorderly or violent reaction of the audience' is a form of content discrimination, generally forbidden in a traditional or designated public forum," which would effectively create a "heckler's veto." *Seattle Mideast Awareness Campaign v. King Cnty.*, 781 F.3d 489, 502 (9th Cir. 2015) (citing *Rosenbaum v. City & Cnty. of San Francisco,* 484 F.3d 1142,1158 (9th Cir. 2007)). Defendants-Appellees fail to support how this could fall within an "exception to protected speech." *See Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 945 F. Supp. 1355, 1370 (D. Or. 1996) (discussing the "'fighting words' exception to protected speech" as "incit[ing] *imminent* lawless action which is *likely* to occur") (emphasis added).

Plaintiff-Appellants' retaliation assertions, especially given the latter's temporal and subject matter proximity. Tr. 37–38, 41–43. Here, as "[i]n many cases, 'establishing the causal connection between a defendant's animus and a plaintiff's injury is straightforward,' and courts may take 'the evidence of the motive and the [defendant's wrongdoing] as sufficient for a circumstantial demonstration that the one caused the other.'" *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). While post-hoc rationalizations are inadequate to justify First Amendment restrictions, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 n.8 (2022) (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)), Defendant Richer's Twitter statement—that flaunted Maricopa County's denial and mocked Plaintiffs-Appellants' exclusion from press events—is evidence that supports an inference of animus in decision-making that is appropriately considered in assessing a party's likelihood to succeed on the merits. *See Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1729 (2018) ("The neutral and respectful consideration . . . was compromised . . . [by] [t]he Civil Rights Commission's treatment of his case [which] has some elements of a clear and impermissible hostility toward the sincere religious beliefs that motivated his objection."); Tr. 38. As a result, the District Court was incorrect in concluding "that the County's denial of a press pass to Mr. Conradson was [not] viewpoint-based." Order, 14, ECF No. 27.

9

## 2. The District Court and Defendants-Appellees mistakenly rely on Seventh Circuit precedent.

The District Court's reliance on the Seventh Circuit's analysis in *John K. MacIver Institute for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 606, 610–15 (7th Cir. 2021) ("*MacIver*"), is misplaced. *See* Order, 7–8, 13–14, ECF No. 27. Although considering the same criteria, there are substantial factual and legal differences with this matter that counsel in favor of a different outcome.

The MacIver Institute was denied a press credential because it was "'not principally a news organization' and 'their practices run afoul of the neutral factors' set forth in the memorandum." *MacIver*, 994 F.3d at 607 (internal citation omitted). In this case, the assessment of different criteria is at issue. Plaintiffs-Appellants were denied because they allegedly "(a) do not avoid real or perceived conflicts of interest and (b) are not free of associations that would compromise journalistic integrity or damage credibility." Compl. Ex. 4, ECF No. 1. Given that "press attendance is limited by time, space, and security concerns, as well as other venue-specific factors," deviations between Maricopa County and Wisconsin must be fully accounted for, which the District Court omitted in its analysis. *See MacIver*, 994 F.3d at 607; Order, 7–8, 13–14, ECF No. 27. Plaintiff-Appellants in the instant matter also put forth evidence of animus. *See supra* Argument (1). By contrast, the Seventh Circuit concluded that "the Governor's media-access criteria [was] . . . not an effort to suppress [plaintiff's] expression because of its

10

viewpoint" and that there was no "evidence that the Governor's office manipulate[d] these neutral criteria" in a viewpoint-discriminatory or retaliatory manner. *MacIver*, 994 F.3d at 610–11. Plaintiffs-Appellants have provided sufficient factual support in the record demonstrating animus. *See, e.g.*, Tr. 38, 53–54.

Additionally, the claims in *MacIver* were different and are legally distinguishable. Notably, the Seventh Circuit did not consider a vagueness challenge, either generally or with respect to the particular criteria contested by Plaintiffs-Appellants. *See* 994 F.3d 602. Nor did the Seventh Circuit consider the elements of a First Amendment retaliation claim. *Id.* The legal analogies that can accurately be made between these cases weigh in favor of Plaintiffs-Appellants. For instance, the Seventh Circuit emphasized "that First Amendment rights do not turn on, nor are they calibrated to, the quality of the reporting." *Id.* at 614. Here, even when "consider[ing] the press-pass scheme as a whole," the criteria Defendants-Appellees apply to Plaintiffs-Appellants' press application erroneously considers the content and viewpoint espoused in the publication's articles. Order, 7, ECF No. 27; *see supra* Argument (1). For these reasons, reliance on *MacIver* is misplaced, and the District Court's application of the Seventh Circuit's analysis should be eschewed.

### 3. The District Court erred in concluding that remote-only viewing access to Maricopa County's press conferences constituted a *de minimis* harm.

Maricopa County officials noted in their denial email that "any press conference about the 2022 Election will be streamed to a Maricopa County YouTube channel and you are welcome to view it." Compl. Ex. 4, ECF No. 1. In asserting that "Plaintiffs are not likely to suffer irreparable harm in the absence of preliminary relief," Maricopa County contends that remote viewing of press conferences is a "*de minimis*" harm. *See* Defs.' Resp. 11–12, ECF No. 17. To support that proposition, Defendants-Appellees cited a single case: *Alaska Landmine, LLC v. Dunleavy*, 514 F. Supp. 3d 1123 (D. Alaska 2021), *appeal dismissed*, No. 21-35137, 2021 WL 2103741 (9th Cir. Mar. 4, 2021).

However, this reliance is misplaced, as *Alaska Landmine* undercuts Defendants-Appellants' proffered assertion. In that matter, the court concluded that "[w]ithout an injunction enjoining the government from excluding [plaintiff] from their media advisory list absent a consistently applied, neutral media invitee policy" there existed "irreparable harm." *Id.* at 1135. While Defendants-Appellees contend that remote viewing of press conferences is a *de minimis* harm because "the COVID-19 pandemic requires events like press conferences to be held virtually," Defs.' Resp. 12, ECF No. 17 (quoting *Alaska Landmine*, 514 F. Supp. 3d at 1135), that analogy is inapt here because not all members of the press are remote. As the *Alaska Landmine* court underscored: "there will be a return to in-

person events in the near future where an individual who is not invited to press conferences will not be able to access the information disseminated in them or report on that information." *Alaska Landmine*, 514 F. Supp. 3d at 1135. That is exactly the situation presented in the instant case: Plaintiffs-Appellants are required to view proceedings virtually when other entities are permitted to be present live. Unlike earlier stages of the pandemic when all press might be in virtual attendance, here Plaintiffs-Appellants are being treated differently than other members of the press. Accordingly, like the "[p]laintiffs' attendance at the Governor's press conferences certainly is protected," the right of Plaintiffs-Appellants should be similarly safeguarded. *See id*.

The District Court erroneously relied on this faulty reasoning in concluding that viewing press conferences only via live streams was a "*de minimis*" harm and in deciding this alternative was an adequate substitute for in-person attendance. *See* Order, 15–16, ECF No. 27 (relying on *Alaska Landmine* to conclude that "the harm of being excluded from press conferences [is] *de minimis* where the public can access livestreams of such conferences"). While in-person attendance does not guarantee a member of the press the right to be called on or to have their question answered, *see Alaska Landmine*, 514 F. Supp. 3d at 1135, the current Maricopa County policy deprives Plaintiffs-Appellants of even that possibility.

There are also other potential benefits to in-person attendance, as supported by testimony presented to the trial court. As Arizona State University Professor Leslie testified, "There's a big difference between being in the room and getting to observe multiple people at once versus whatever the camera happens to be focused on." Tr. 24. "There's just a lot about journalism that benefits from having access to the official proceedings," he noted. *Id.* at 29. Observations and discussions that cannot be replicated in a virtual space are critical to journalists and news development: "[I]f you can be there, you can see other people involved. You can see who's got an interest. You can talk to others as they leave the room." *Id.*

For these reasons, exclusion from a press event constitutes irreparable harm and a remote participation option is not equivalent. Having established a limited public forum and permitting the "participation [of] some [members] of the media, the First Amendment requires equal access to all of the media or the rights of the First Amendment would no longer be tenable." *Huminski v. Corsones*, 396 F.3d 53, 84 (2d Cir. 2005) (citing *Am. Broad. Co. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977)).

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed, the injunctive relief granted, and the case remanded for consideration of Plaintiffs-Appellants' claims on the merits.

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom
Stanton Foundation First Amendment Clinic
Vanderbilt Law School
131 21st Ave South
Nashville, TN 37203-1181
(615) 322-4964
jennifer.safstrom@vanderbilt.edu

*Jamie Michael, student-attorney with the Clinic, assisted substantially in the preparation of this brief

# CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party. This brief contains 2,118 words and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this amicus brief complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 16, 2022. All participants in the case are registered CM/ECF users who will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom