*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

TGP COMMUNICATIONS, LLC, a Missouri limited liability company,
DBA The Gateway Pundit and JORDAN CONRADSON, an individual,

*Plaintiffs-Appellants,*

v.

JACK SELLERS, BILL GATES, CLINT HICKMAN, STEVE GALLARDO,
in their respective official capacities as members of the Maricopa County Board of Supervisors,
STEPHEN RICHER, in his official capacity as the Maricopa County Recorder,
REY VALENZUELA, SCOTT JARRETT, in their official capacities as Maricopa
County Election Directors, MEGAN GILBERTSON and MARCUS MILAM,
in their official capacities as Maricopa County Communications Office,

*Defendants-Appellees.*

---

*Appeal from a Decision of the United States District Court for the District of Arizona,
No. 2:22-cv-01925-JJT · Honorable John Joseph Tuchi*

## BRIEF OF *AMICI CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION AND THE MARION B. BRECHNER FIRST AMENDMENT PROJECT IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

ABIGAIL E. SMITH, ESQ.
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
(215) 717-3473 Telephone
abby.smith@thefire.org

RONNIE G. LONDON, ESQ.
*Counsel of Record*
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
(215) 717-3473 Telephone
ronnie.london@thefire.org

*Attorneys for* Amici Curiae *Foundation for Individual Rights and Expression
and The Marion B. Brechner First Amendment Project*



## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amicus* Foundation for Individual Rights and Expression and *amicus* Marion B. Brechner First Amendment Project certify that (1) *amici* do not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amici*.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iv

INTEREST OF *AMICI CURIAE* ............................................................ 1

SUMMARY OF ARGUMENT ................................................................ 2

ARGUMENT ...................................................................................... 6

I.    Viewpoint Discrimination is Unconstitutional in Any Forum. ................................................................................... 7

II.   The Maricopa County Press Pass Regulation is Facially Unconstitutional Because it Enables Viewpoint Discrimination. ................................................................... 8

III.  County Officials Applied the Press Pass Regulation to Mr. Conradson and The Gateway Pundit in a Viewpoint Discriminatory Manner ............................................................ 13

CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*,
 447 U.S. 530 (1980) ............................................................... 12

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
 473 U.S. 788 (1985) ................................................................. 7

*Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. Sch.
Dist. No. 9*,
 880 F.3d 1097, 1106–07 (9th Cir. 2018) ................................ 7

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.
Bd. of Educ.*,
 46 F.4th 1075 (9th Cir. 2022) ......................................... 1, 15

*Forsyth Cnty., Ga. v. Nationalist Movement*,
 505 U.S. 123 (1992) ...................................................... passim

*Iancu v. Brunetti*,
 139 S. Ct. 2294 (2019) ........................................................... 8

*John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*,
 994 F.3d 602 (7th Cir. 2021) ................................................ 11

*Kennedy* v. *Bremerton Sch. Dist.*,
 142 S. Ct. 2407 (2022) ........................................................... 1

*Matal v. Tam*,
 137 S. Ct. 1744 (2017) ........................................................... 6

*Mia. Herald Pub. Co. v. Tornillo*,
 418 U.S. 241 (1974) ............................................................. 12

*Nally v. Pfeiffer*,
 No. 2:21-cv-02113 (D. Kan. Feb. 8, 2022) ........................... 2

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
 460 U.S. 37 (1983) ................................................................. 7

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
   515 U.S. 819, 829 (1995) .......................................................... 6

*Villarreal v. City of Laredo, Tex.,*
   17 F.4th 532 (5th Cir. 2021) ................................................... 2

## Other Authorities

*John* 18:38 ............................................................................... 2

# INTEREST OF *AMICI CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit dedicated to defending the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended individuals' rights through public advocacy, strategic litigation, and participation as *amicus curiae* in cases implicating expressive rights under the First Amendment. *See, e.g.*, Brief of FIRE as *Amicus Curiae* in Support of Petitioner, *Novak v. City of Parma*, No. 22-293, *petition for cert. filed* Sep. 26, 2022; Brief of FIRE as *Amicus Curiae* in Support of Petitioner, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022); Brief of FIRE as *Amicus Curiae* in Support of Plaintiffs-Appellants and Reversal, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075 (9th Cir. 2022);

FIRE has a direct interest in this case because this Court's jurisprudence on press freedom impacts the individuals FIRE represents.

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amici*, their members, or their counsel contributed money intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

FIRE regularly represents citizen and student journalists that face government censorship or sanctions for their protected reporting. *See, e.g.*, Consent Decree, *Nally v. Pfeiffer*, No. 2:21-cv-02113 (D. Kan. Feb. 8, 2022); *Villarreal v. City of Laredo, Tex.*, 17 F.4th 532 (5th Cir. 2021), *withdrawn and superseded by* 44 F.4th 363 (5th Cir. 2022), *reh'g en banc granted, opinion vacated*, 52 F.4th 265 (5th Cir. 2022). FIRE files this brief in support of Appellants to urge this Court to hold that the Maricopa County Press Pass Regulation is unconstitutional viewpoint discrimination both on its face and as applied against Plaintiff.

The Marion B. Brechner First Amendment Project is a nonprofit, nonpartisan organization located at the University of Florida in Gainesville, Florida. Directed by attorney and professor of law Clay Calvert, the Project is dedicated to contemporary First Amendment issues. The views of the Project expressed herein are independent of those of the University of Florida, its administrators and its Board of Governors.

## SUMMARY OF ARGUMENT

Almost 2,000 years ago, a Roman governor asked: "What is truth?" *John* 18:38. Today, Maricopa County election officials seek to answer that

timeless question for themselves. Their answer: Whatever keeps Mr. Conradson and The Gateway Pundit out of their press conferences. The Press Pass Regulation they formulated to achieve this goal seeks to place the government as the arbiter of objectivity, and county officials as gate-keepers of truth. Because nothing in the regulation prevents county officials from using their unfettered discretion to make these wholly subjective determinations based on viewpoint, it is facially unconstitutional. Because that is exactly what they did to restrict The Gateway Pundit's reporting, it is unconstitutional as applied. It should be struck down.

During and after the 2020 general election, Maricopa County found itself at the center of a nationwide scandal on election integrity, dominated primarily by supporters of President Donald Trump claiming that mishandling of ballots and other alleged election fraud led to his loss in Arizona. Few media outlets were more critical of Maricopa County officials than The Gateway Pundit, a political news site whose reporting on Arizona elections comes predominantly from Plaintiff-Appellant Jordan Conradson. As a result of his elections coverage, Mr. Conradson

describes his relationship with Maricopa County Board of Elections members as "adversarial." Appellants' Opening Br., ECF No. 16 at 5.

As a result of increased media interest in Arizona elections in 2020, and in an effort to "mak[e] space for people that [the County] knew were legitimate members of the media," 2-ER-83:13–20, Maricopa County in September 2022 implemented its Press Pass Regulation, which governs access to election-related press conferences and the voting tabulation center. The Regulation permits election officials to exclude applicants based on, among other factors, whether the applicant journalist avoids "real or perceived conflicts of interest" and is "free of associations that would compromise journalistic integrity or damage credibility." 2-ER-159. This regulation provides no standards whatsoever to determine "integrity" or "credibility." In reality—and as this Court acknowledged in granting an injunction pending appeal—this requirement is a smokescreen to regulate truth, one that county officials are arbitrarily using to exclude journalists they think are spreading lies based on the county's own subjective interpretations. Regardless, whether the Press Pass Regulation seeks to require objectivity or to regulate truth, the

result is the same: Both constitute unconstitutional viewpoint discrimination.

The parties focus on several constitutional claims, but this Court can significantly simplify this case by resolving it on one ground: Viewpoint discrimination. The Supreme Court has already held that similar broadly discretionary schemes are unconstitutional on their face in affording unfettered authority that can be used to engage in viewpoint discrimination. *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123 (1992). Worse, county officials here have, in fact, actually applied the standard to Mr. Conradson and The Gateway Pundit in a viewpoint discriminatory manner. Defendants have openly and repeatedly admitted to denying a press pass because they do not agree with the website's prior reporting. That is textbook viewpoint discrimination and is plainly prohibited by the First Amendment.

Maricopa County officials want to decide what is true and keep out journalists that disagree. But the year is 2022, not 1984. Rather than rubberstamp county officials' attempt to become a Ministry of Truth, this Court should act to defend the First Amendment rights of journalists to gather and report on the news by reversing the decision below.

## ARGUMENT

Under the First Amendment, government actors "must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995); *accord Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017). When government officials do so anyway, they engage in viewpoint discrimination, "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. Here, as held by the Supreme Court in *Forsyth County, Georgia v. The Nationalist Movement*, 505 U.S. 123 (1992), the Press Pass Regulation's reliance on vague terms and total lack of content-neutral criteria makes the regulation facially unconstitutional, regardless of to whom it is applied, because it affords county officials unlimited discretion to engage in viewpoint discrimination. But even if it were facially valid, Maricopa County officials actually did apply the Press Pass Regulation to Mr. Conradson and The Gateway Pundit in a viewpoint discriminatory way. The Press Pass Regulation thus violates the First Amendment and the Court should

reverse the district court's denial of a preliminary injunction to Appellants.

## I. Viewpoint Discrimination is Unconstitutional in Any Forum.

While the parties dispute whether the Maricopa County Press Pass and the access it confers to press conferences and voting tabulation create a limited public forum or a nonpublic forum, this Court need not engage in forum analysis to reverse because the County engaged in viewpoint discrimination, which is unconstitutional in any forum. Even in nonpublic forums, where the government has the most leeway to restrict speech, it can restrict access only "as long as the restrictions are '. . . not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 46 (1983)); *accord Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. Sch. Dist. No. 9*, 880 F.3d 1097, 1106–07 (9th Cir. 2018) (striking down viewpoint discriminatory policies restricting teachers union from picketing nonpublic areas of public school property). Maricopa County violated that cardinal rule here. *See infra* Sections II–III.

## II. The Maricopa County Press Pass Regulation is Facially Unconstitutional Because it Enables Viewpoint Discrimination.

The Press Pass Regulation's standards for determining objectivity are so malleable and undefined that they grant officials unbridled discretion to deny press passes based on whether they think a journalist's prior reporting is accurate, regardless of so-called objectivity. Granting government a free license to determine what makes a "good" journalist and then allowing it to exclude "bad" journalists based on the content of their prior journalism violates the rule that "[t]he government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019).

The Supreme Court invalidated a similarly standardless permitting scheme in *Forsyth County, Georgia v. The Nationalist Movement*, 505 U.S. 123 (1992). There, a county ordinance required any private person or group to pay a permitting fee when applying to use public property. *Id.* at 126. It allowed the county administrator to "adjust the amount to be paid" by permit applicants but included no standards for when or how to do so. *Id.* at 126–27. The Supreme Court held the regime violated the First Amendment because "the decision how much to

charge . . . is left to the whim of the administrator." *Id.* at 133. The Court noted the lack of "articulated standards either in the ordinance or in the county's established practice," and that the administrator need not "rely on any objective factors," nor "provide any explanation for his decision." *Id.* Indeed, "[n]othing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees." *Id.* As a result, the ordinance was unconstitutional on its face because the "First Amendment prohibits the vesting of such unbridled discretion in a government official." *Id.* Importantly, it did not matter to the Court whether the county administrator *actually did* choose to apply "legitimate, content-neutral criteria." *Id.* at 133 n.10. The mere existence of a scheme that "delegate[d] overly broad discretion to the decisionmaker" was sufficient for a successful facial challenge. *Id.*

The Press Pass Regulation here presents the same problems the Court identified in *Forsyth*. To determine whether an applying journalist's reporting is sufficiently objective, the Regulation relies on vague, subjective terms like "repute," "associations," "journalistic integrity," and "credibility." 2-ER-159. Like the permitting scheme in

*Forsyth*, it does not include any "articulated standards" for determining the meaning of those vague terms. *Forsyth*, 505 U.S. at 133. While Maricopa County officials have cited standards set forth in the Society of Professional Journalists (SPJ) Code of Ethics as the basis for the Press Pass Regulation, *see* 2-ER-147, 2-ER-212, they have never actually claimed to apply those standards in interpreting the Press Pass Regulation, nor have they claimed to be bound by them. *See, e.g.*, 2-ER-93:1–11 (county election official providing self-authored definition of "conflict of interest" without reference to or basis in the SPJ Code of Ethics). Indeed, as the district court acknowledged, unrebutted expert testimony established the SPJ Code was merely "aspirational" and "never meant to punish journalists" or to "be a legal standard." Order at 8 n.2 (citing 2-ER-34). In sum, the Press Pass Regulation provides no neutral, measurable factors to guide officials' decisions on whether its terms are satisfied. Under *Forsyth*, that is sufficient to invalidate the Regulation under the First Amendment. 505 U.S. at 133.

Worse still, it is highly questionable whether the government even *could* devise non-viewpoint discriminatory criteria to decide whether a journalist demonstrates "objectivity," because requiring a journalist to be

"objective" inherently requires him to meet the government's conception of a particular viewpoint ("objectivity") and punishes him for reporting from other viewpoints (such as a conservative slant). To the extent the Seventh Circuit held otherwise in the *MacIver* case, this Court has already distanced itself from that holding in its order granting an injunction pending appeal. Order, ECF No. 13 at 12–13. Now that this case is being considered on the merits, this Court should expressly reject that holding. In *John K. MacIver Institute for Public Policy, Inc. v. Evers*, 994 F.3d 602 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 711 (2021), the Seventh Circuit held that similar press pass criteria were "reasonably related to the viewpoint-neutral goal of increasing journalistic integrity." *Id.* at 610. But allowing the government to determine what constitutes "journalistic integrity" requires county officials to assess whether a journalist's prior reporting was, among other things, truthful. Indeed, that is exactly what Maricopa County officials did here. *See* Order, ECF No. 13 at 11 (observing that "Conradson's press pass was denied because [in the County's view] he doesn't seek the truth . . . .") (cleaned up). As this Court already remarked, "[p]ermitting 'truth' to be determined by the County violates our foundational notions of a free press." *Id.*

When it comes to politics, truth is in the eye of the beholder. So, too, is objectivity: What one journalist sees as clear-cut, a government official may see as spurious. For example, the belief that the 2020 and 2022 Maricopa County elections were improperly conducted is a viewpoint likely shared by many of The Gateway Pundit's "more than two-and-a-half million readers," 1-ER-3, but is likely held by far fewer Maricopa County election officials. And even if "objectivity" is not a particular journalist's North Star, the First Amendment protects the right to opine equally with the right to report, for "[a] newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a newspaper, . . . and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of [First Amendment-protected] editorial control and judgment." *Mia. Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Ultimately, the Supreme Court has already held it almost always violates the First Amendment to grant "government control over the search for political truth." *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 538 (1980). Yet that is exactly what the Press Pass Regulation seeks to do. The government cannot restrict access

to facilities and press conferences based solely on a journalist's viewpoint that something is or isn't true, nor on his reporting from that viewpoint. Allowing restrictions based on the arbitrary decisions of government officials, rather than objective standards, makes viewpoint discrimination all but inevitable. Because the Press Pass Regulation requires discrimination against non-"objective" viewpoints and determines objectivity based on vague and arbitrary standards, it is unconstitutional on its face.

## III. County Officials Applied the Press Pass Regulation to Mr. Conradson and The Gateway Pundit in a Viewpoint Discriminatory Manner.

Even if the Press Pass Regulation were viewpoint neutral on its face, which it is not, this Court has already held Maricopa County officials blatantly applied it to deny press-pass access based on Mr. Conradson's and The Gateway Pundit's viewpoint. Order, ECF No. 13 at 13. While that determination was "at th[e] preliminary stage" of this appeal, *id.*, fuller consideration confirms its soundness.

Unrebutted evidence from the County's witnesses makes clear that county officials had a vendetta against The Gateway Pundit based on its prior reporting on the 2020 and 2022 elections. For example, Roy Mosely,

the Maricopa County Communications Director who implemented the Press Pass Regulation, *see* 2-ER-83:4–7, testified that Mr. Conradson was denied a pass because "his articles have led to direct threats to Board of Election officials and employees."[2] 2-ER-95:9–17. Elsewhere, in responding to the Motion for Temporary Restraining Order, the County opined that Mr. Conradson's work was "poorly sourced, researched, and reported" simply because it used "inflammatory and/or accusatory language, such as 'Fake News Media,' 'globalist elitist establishment,' and 'highly flawed 2022 Primary Elections.'" 2-ER-146.

Perhaps most damning, Stephen Richer, a named defendant and Maricopa County Recorder (an office that administers elections), retweeted a Twitter post stating: "County elections getting all fancy. Really gonna miss The Gateway Pundit rolling in and trying to listen in on legitimate reporter conversations/intimidate public officials." 3-ER-339. This tweet (and its apparent endorsement by a county election official) strongly implies that elections became "all fancy"—in other

---

[2] As noted by this Court, there is no evidence that Mr. Conradson made or encouraged such threats himself. Order, ECF No. 13 at 11 n.3.

words, the county implemented the Press Pass Regulation—with a specific goal of excluding The Gateway Pundit.

In sum, throughout both the decision to exclude Mr. Conradson under the Press Pass Regulation and this litigation, county officials have expressed open hostility towards Mr. Conradson and The Gateway Pundit for their repeated criticism of Maricopa County elections and the government officials connected to them. That hostility crosses a constitutional line when government officials cite that prior criticism as grounds to restrict press access, as Appellees did here. *Accord Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1093 (9th Cir. 2022) (school officials violated the First Amendment when they selectively enforced a facially broad regulation to target a disfavored group based on its views). Doing so constitutes viewpoint discrimination and is an independent reason to reverse the district court.

## CONCLUSION

For the foregoing reasons, the district court's opinion denying injunctive relief should be reversed.

Dated: December 16, 2022            /s/ Ronnie G. London

Ronnie G. London
  *Counsel of Record*
Foundation for Individual
  Rights and Expression
700 Pennsylvania Ave. SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

*Counsel for* Amici Curiae

**Certificate of Compliance With Type-Volume Limit**

1.      This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 2,850 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.


Date: December 16, 2022          /s/ Ronnie G. London
                                 Ronnie G. London
                                 FOUNDATION FOR INDIVIDUAL
                                   RIGHTS AND EXPRESSION

# CERTIFICATE OF SERVICE

The undersigned certifies that on December 16, 2022, an electronic copy of the Foundation for Individual Rights and Expression and the Marion B. Brechner First Amendment Brief of *Amici Curiae* was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

Dated: December 16, 2022          /s/ Ronnie G. London
                                  _____

                                  RONNIE G. LONDON
                                    *Counsel of Record*
                                  FOUNDATION FOR INDIVIDUAL
                                    RIGHTS AND EXPRESSION
                                  700 Pennsylvania Ave. SE
                                  Suite 340
                                  Washington, DC 20003
                                  (215) 717-3473
                                  ronnie.london@thefire.org