No. 22-16826

# The United States Court of Appeals for the Ninth Circuit

TGP Communications, LLC and Jordan Conradson,

Plaintiffs - Appellants

v.

Jack Sellers, *et al.*,

Defendants - Appellees

On appeal from the
United States District Court, District of Arizona at Phoenix,
No. CV-22-01925-PHX-JJT
The Honorable John J. Tucci, presiding.

**BRIEF OF *AMICUS CURIAE*
FIRST AMENDMENT LAWYERS ASSOCIATION
IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL**

D. Gill Sperlein
The Law Office of D. Gill Sperlein
345 Grove Street
San Francisco, CA 94102
phone: (415) 404-6615
fax: (415) 404-6616
email: gill@sperleinlaw.com

Attorney for First Amendment
Lawyers Association

## CORPORATE DISCLOSURE STATEMENT

The First Amendment Lawyers Association is an Illinois non-profit membership corporation, which does not have any shareholder(s) or subsidiary(ies).

*/s/ D. Gill Sperlein*
D. Gill Sperlein

**Attorney of Record for *Amicus Curiae***
**The First Amendment Lawyers Association**

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................. 2

Table of Contents ................................................................................. 3

Table of Authorities ............................................................................. 4

Statement of Identity of *Amicus Curiae* ................................................ 8

Statement of Support ........................................................................... 9

Introduction ...................................................................................... 10

Argument .......................................................................................... 14

    I.   While courts do not ordinarily review orders on TROs immediately, exceptions are permissible. ........................................... 14

    II.  Immediate appellate review is required when a trial court issues a presumptively unconstitutional prior restraint on speech. ................ 18

    III.   Speech opportunities, especially news reporting opportunities, are uniquely ephemeral. .................................................................... 20

    IV.   The District Court's denial of the motion for TRO equates to a prior restraint on speech. ................................................................... 22

Conclusion and Prayer .......................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*, 138 S. Ct. 2305 (2018)................................................... 14

*Alexander v. United States*, 509 U.S. 544 (1993) .................................. 21

*Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790 (9th Cir. 2011).. 23

*Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666 (1998)......... 22

*ASF, Inc. v. City of Bothell*, No. C07-1074Z, 2007 U.S. Dist. LEXIS

    92525 (W.D. Wash. Dec. 17, 2007) ...................................................... 22

*Baltimore Contractors, Inc.* v. *Bodinger*, 348 U.S. 176 (1955) .............. 13

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).............................. 19

*Barnes v. Glen Theatre*, 501 U.S. 560 (1991) ..................................... 9, 11

*Bennett v. Medtronic, Inc.*, 285 F.3d 801 (9th Cir. 2002) ...................... 14

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009)................................... 20

*Bridges v. California*, 314 U.S. 252 (1941) .......................................... 20

*Carson v. Am. Brands*, 450 U.S. 79 (1981) ..................................... 14, 16

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) ............................................ 19

*Citizens United v. FEC*, 558 U.S. 310 (2010) ....................................... 10

*City of Littleton, Colo. v. ZJ Gifts D-4, LLC*, 541 U.S. 774 (2004)......... 18

*Cobbledick* v. *United States*, 309 U.S. 323 (1940) ................................. 13

*Connick v. Myers*, 461 U.S. 138 (1983).................................................. 20

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014)................................. 20

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018).... 14

*Elrod v. Burns*, 427 U.S. 347 (1976)...................................................... 12

*Env't Def. Fund, Inc. v. Andrus*, 625 F.2d 861 (9th Cir. 1980) .............. 13

*Freedman v. Maryland*, 380 U.S. 51, 59 (1965) .................................... 18

*FW/PBS v. City of Dallas*, 493 U.S. 215 (1990) .................................... 18

*Glen Theatre, Inc v. Civil City of South Bend*, 695 F.Supp 414 (N.D. Ind. 1988) ..................................................................................... 11

*Glen Theatre, Inc. v. Pearson*, 726 F. Supp. 728 (N.D. Ind. 1985) ......... 11

*Glen Theatre, Inc. v. Pearson*, 802 F.2d 287 (7th Cir. 1986) .................. 11

*Graham v. Teledyne-Cont'l Motors*, 805 F.2d 1386 (9th Cir. 1986) ....... 12

*Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994)....................................................................................... 20

*In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986) ................ 20

*In the Matter of Providence Journal Company*, 820 F.2d 1342 (1st Cir. 1986),....................................................................................... 17

*Ingram v. Ault,* 50 F.3d 898 (11th Cir. 1995) ....................................... 16

*Kimball v. Commandant Twelfth Naval Dist.*, 423 F.2d 88 (9th Cir. 1970)....................................................................................... 15

*Lee v. Weisman*, 505 U.S. 577 (1992)....................................................... 9

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) .............. 21

*McDougald v. Jenson*, 786 F.2d 1465 (11th Cir. 1986) .......................... 15

*Miller v. Civil City of South Bend*, 887 F.2d 826 (7th Cir. 1989)........... 11

*Miller v. Civil City of South Bend*, 904 F.2d 1081 (7th Cir. 1989)......... 11

*N. Stevedoring & Handling Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 685 F.2d 344 (9th Cir. 1982) ........................ 15

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ...................... 20

*Nat'l Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43 (1977) 9, 12, 17, 21

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell,* 467 F.3d 999 (6th Cir. 2006) ................................................ 16

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ..................... 18

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ......... 9, 10, 18

*Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219 (6th Cir. 1996) 17, 19

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015) ................. 23

*Religious Tech. Ctr. v. Scott*, 869 F.2d 1306 (9th Cir. 1989) .................. 12

*Rivas v. Jennings*, 845 F. App'x 530 (9th Cir. 2021) .............................. 14

*Romer v. Greenpoint Sav. Bank*, 27 F.3d 12 (2d Cir. 1994) ................... 16

*S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938 (9th Cir. 2020) ................................................................................................... 15

*Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061 (9th Cir. 2010) ............................................................................ 14

*Snyder v. Phelps,* 562 U.S. 443 (2011) ......................................... 9, 10, 20

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) ............ 18

*Stein v. Thomas*, 672 F. App'x 565 (6th Cir. 2016) ................................. 16

*United States v. New York Times Co.*, 444 F.2d 544 (2d Cir. 1971) ...... 10

*United States v. Stevens*, 559 U.S. 460 (2010) ....................................... 10

*United States v. Washington Post Co.*, 446 F.2d 1327 (D.C. Cir. 1971)  10

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) ............................ 14

**Statutes**

28 U.S.C. § 1292(a)(1) ........................................................................ 12, 14

## STATEMENT OF IDENTITY OF *AMICUS CURIAE*

*Amicus Curiae* First Amendment Lawyers Association ("FALA") is an Illinois nonprofit corporation with some 180 members throughout the United States, Canada, and Europe. Its membership consists of attorneys whose practice emphasizes the defense of First Amendment rights and related civil liberties. For more than half a century, FALA members have litigated cases concerning a wide spectrum of such rights, including free expression, free association, and related privacy issues. FALA has frequently appeared as *amicus curiae* before numerous federal courts to provide its unique perspective on some of the most important First Amendment issues of the day.

No party's counsel authored this brief, in whole or in part, and no one other than FALA contributed money that was intended to fund preparing or submitting the brief. FALA has authorized the undersigned to file this memorandum on its behalf.

Counsel for all Parties consented to the filing of this memorandum.

Pursuant to the Circuit Advisory Committee Note to Rule 29-1, *Amicus Curiae* First Amendment Lawyers Association join the arguments of *Amici Curiae* Foundation for Individual Rights and Expression (FIRE), St. Michael's Media, and the Stanton Foundation First Amendment Clinic, but file this separate brief focused on the discrete issue of the Court's jurisdiction over and authority to consider immediate appeals from denials of temporary restraining orders in First Amendment cases.

First Amendment litigation merges the challenge of complex legal analysis with emotionally charged issues in the realms of politics, religion, art, and all other topics conventional wisdom instructs us to avoid during family gatherings. First Amendment jurisprudence sometimes calls on courts to draw difficult lines between the freedom of the press and national security. *See New York Times Co. v. United States*, 403 U.S. 713 (1971) (government sought restraining order to prevent publication of classified documents during war time). Free expression disputes on district court dockets are likely to involve disfavored speech or unpopular speakers because those are the difficult cases that defy other forms of resolution. *See, e.g.*, *Snyder v. Phelps,* 562 U.S. 443 (2011) (religious organization held offensive signs such as "Thank God for IEDs" and "Fag troops" at a soldier's funeral); *Nat'l Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43 (1977) (Nazi Party marching in home to a significant number of Jewish people, many of them survivors of the Holocaust); *Barnes v. Glen Theatre*, 501 U.S. 560 (1991) (challenge to state law requiring G-strings and pasties in nude dancing establishments). Likewise, religious freedom cases brought under the establishment and free exercise clauses are prone to address thorny issues. *Lee v. Weisman*, 505 U.S. 577 (1992) (prohibiting prayer in public schools). The First Amendment is at the center of the most important and controversial campaign finance cases. *Citizens United v. FEC*, 558 U.S.

310 (2010) (striking down campaign finance law). Even animal rights cases can fall within the First Amendment rubric. *United States v. Stevens*, 559 U.S. 460 (2010) (striking down law banning depictions of animal cruelty).

In these emotionally fueled cases, district courts are called upon to rule on motions for temporary restraining orders on limited briefing and within days—or in some cases, hours—of filing. The challenge is daunting, and it is unsurprising that district courts occasionally miss the mark. In fact, in all but two of the landmark cases cited in the previous paragraph, a trial court judge issued an initial injunction that conflicted with the Supreme Court's final resolution.[1] First Amendment cases are difficult.[2]

────────────────

[1] Neither *Snyder* nor *Stevens* involved preliminary injunctions, but the trial courts in those cases also ruled differently from the Supreme Court's final resolution. In *New York Times,* two separate district courts ruled on motions for injunctions. The District Court for the Southern District of New York initially granted a TRO enjoining publication, but later denied a preliminary injunction. *United States v. New York Times Co.*, 444 F.2d 544 (2d Cir. 1971). The District Court for the District of Columbia denied a preliminary injunction, which the Court of Appeals for the District of Columbia Circuit affirmed. *United States v. Washington Post Co.*, 446 F.2d 1327 (D.C. Cir. 1971).

[2] The following procedural summary from *Glen Theatre* is illustrative of how complex First Amendment cases can be. Plaintiffs brought suit to enjoin the enforcement of the statute, on the ground that the statute violated the First Amendment to the United States

As the Motions Panel correctly stated in its Order granting Plaintiffs-Appellants' motion for an injunction pending appeal, circuit courts have jurisdiction over appeals of denials of preliminary injunctions pursuant to 28 U.S.C. § 1292(a)(1) but generally lack jurisdiction over appeals of denials of temporary restraining orders. *See* Motion Panel Order of December 15, 2022, granting Appellants' motion for injunction

---

Constitution. The District Court, granting an injunction, held that the statute was facially overbroad. *Glen Theatre, Inc. v. Pearson*, 726 F. Supp. 728 (N.D. Ind. 1985). The United States Court of Appeals for the Seventh Circuit, reversing on appeal, remanded the case to the District Court in order to determine whether the First Amendment was violated by the statute as applied to the type of dancing at issue. *Glen Theatre, Inc. v. Pearson*, 802 F.2d 287 (7th Cir. 1986). On remand, the District Court held that such dancing was not protected expressive activity, and accordingly judgment was rendered in favor of the defendants. *Glen Theatre, Inc v. Civil City of South Bend*, 695 F.Supp 414 (N.D. Ind. 1988). A panel of the Court of Appeals, reversing on appeal, held that the dancing at issue was expressive conduct protected by the First Amendment. *Miller v. Civil City of South Bend*, 887 F.2d 826 (7th Cir. 1989). On rehearing en banc, the Court of Appeals (1) held that the Indiana statute was an improper infringement of expressive activity, because the statute's purpose was to prevent the message of eroticism and sexuality conveyed by the dancers in question; and (2) enjoined the state from enforcing the statute against the plaintiffs so as to prohibit nonobscene nude dancing as entertainment. *Miller v. Civil City of South Bend*, 904 F.2d 1081 (7th Cir. 1989). On certiorari, the United States Supreme Court reversed. Although unable to agree on an opinion, five members of the court agreed that the Indiana statute, as applied to prohibit nude dancing performed as entertainment, did not violate the First Amendment." *Barnes*, 501 U.S. 560 (1991).

pending appeal ("Order") at 2 ¶ 2 and 6 § A (citing *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1308 (9th Cir. 1989)). Nonetheless, the Motions Panel ruled that the Circuit Court has jurisdiction here because there was a full evidentiary hearing and the district court's order was effectively a denial of preliminary relief. *Id.* (citing *Graham v. Teledyne-Cont'l Motors*, 805 F.2d 1386, 1388 (9th Cir. 1986)). FALA agrees.[3]

However, FALA weighs in here to stress that the appealability of an order on a TRO in First Amendment cases does not turn solely on whether there was a full evidentiary hearing. Because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.), "immediate appellate review" of prior restraints is constitutionally <u>required</u>, *Skokie*, 432 U.S. at 44.

---

[3] While the Court must give deference to motions panel decisions made in the course of the same appeal, the Court has an independent duty to decide whether it has jurisdiction. *Catholic Soc. Servs. v. Meese*, 813 F.2d 1500 (9th Cir. 1987) (citing *United States v. Houser*, 804 F.2d 565, 568 (9th Cir. 1986) (reviewing a motions panel decision as establishing the law of the case with respect to jurisdiction)).

# ARGUMENT

## I.    WHILE COURTS DO NOT ORDINARILY REVIEW ORDERS ON TROS IMMEDIATELY, EXCEPTIONS ARE PERMISSIBLE.

The first Judiciary Act of 1789, 1 Stat. 73, established the general principle that only *final* decisions of the federal district courts would be reviewable on appeal. *See Baltimore Contractors, Inc.* v. *Bodinger*, 348 U.S. 176, 178–79 (1955); *Cobbledick* v. *United States*, 309 U.S. 323, 324–25 (1940). However, 28 U.S.C. § 1292(a)(1) permits appeal as of right from "interlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." While orders on TROs are not ordinarily reviewable, there are exceptions to the rule. For example, as the Motion Panel indicated, an order denying a temporary restraining order "after a full adversary hearing" is appealable "where the order effectively denies injunctive relief." Order at 6 § A (citing *Env't Def. Fund, Inc. v. Andrus*, 625 F.2d 861, 862 (9th Cir. 1980)). The Motion Panel's Order might leave some with the impression that orders on TROs are <u>only</u> immediately appealable when there has been a full evidentiary hearing. That is not the case. There are other exceptions to the rule and TRO orders resulting in First Amendment activity being suppressed are appealable even when there is no "full evidentiary hearing."

Under Supreme Court precedent, "where an order has the 'practical effect' of granting or denying an injunction, it should be treated as such

for purposes of appellate jurisdiction." *Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) (quoting *Carson v. Am. Brands*, 450 U.S. 79, 83 (1981)). "[T]he label attached to an order does not determine [] jurisdiction." *Rivas v. Jennings*, 845 F. App'x 530, 533 (9th Cir. 2021) (*citing Carson,* 450 U.S. at 83); *see also*, *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002) ("It is the essence of the order, not its moniker, that determines [] jurisdiction.").

In the Ninth Circuit, the Court of Appeals has jurisdiction to hear an appeal from an order on a TRO if it "possesses the qualities of a preliminary injunction." *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017) (citing *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1067 (9th Cir. 2010)). "This rule has ordinarily required the would-be appellant to show that the TRO was "strongly challenged" in adversarial proceedings before the district court and that it has or will remain in force for longer than the fourteen-day period identified in Federal Rule of Civil Procedure 65(b)." *Id.*; *see also E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) (treating TRO as an appealable injunction where the government "had an opportunity to be heard," and the order was scheduled to remain in effect for 30 days).

The Ninth Circuit observes that "under certain circumstances the denial of temporary or preliminary relief may decide the merits of a case.

[and instructs that] In such a situation nothing is gained by requiring an appellant to go through the motions of re-applying for permanent injunctive relief in the trial court." *Kimball v. Commandant Twelfth Naval Dist.*, 423 F.2d 88, 89 (9th Cir. 1970). "When a temporary restraining order decides the merits of a case, the appellate court will not require an appellant to go through additional proceedings for a permanent injunction." *N. Stevedoring & Handling Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 685 F.2d 344, 347 (9th Cir. 1982) (citing *Kimbal,* 423 F.2d at 89).

In a case where there is a non-evidentiary hearing on a motion for TRO and OSC why a preliminary injunction should not issue, the Court of Appeal has "jurisdiction to review the denial of a temporary restraining order where, [ ] 'the circumstances render the denial tantamount to the denial of a preliminary injunction.'" *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020), *citing Religious Tech Ctr.*, 869 F.2d at 1308–09.

Sister Circuits apply similar rules, some varying in result—others only in language. For example, in the Eleventh Circuit, TRO rulings "are subject to appeal as interlocutory injunction orders if the appellant can disprove the general presumption that no irreparable harm exists." *McDougald v. Jenson*, 786 F.2d 1465, 1473 (11th Cir. 1986), *cert. denied*, 479 U.S. 860 (1986). Of course, under this standard, any order on a TRO

resulting in the suppression of First Amendment rights would be (and should be) immediately appealable. In the Second Circuit, immediate review is available when the grant or denial of a TRO might have a "serious, perhaps irreparable, consequence," and can be "effectually challenged only by immediate appeal." *Romer v. Greenpoint Sav. Bank*, 27 F.3d 12, 15 (2d Cir. 1994) (cleaned up) (cited approvingly in *Ingram v. Ault,* 50 F.3d 898, 899 (11th Cir. 1995)).[4] The Sixth Circuit has "acknowledged exceptions to this rule that permit appeal whenever irreparable harm will occur before the order expires, or the order requires 'affirmative action' rather than simply preserving the status quo." *Stein v. Thomas*, 672 F. App'x 565, 569 (6th Cir. 2016) (quoting *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1005–06 (6th Cir. 2006)). This standard would also require the availability of immediate review of any order on a TRO resulting in the suppression of First Amendment rights because such suppression always causes irreparable harm.

---

[4] Other types of orders may also be immediately appealable if they have "the practical effect of refusing an injunction." *Carson*, 450 U.S. at 84 (holding refusal to enter consent decree was immediately appealable).

II. **IMMEDIATE APPELLATE REVIEW IS REQUIRED WHEN A TRIAL COURT ISSUES A PRESUMPTIVELY UNCONSTITUTIONAL PRIOR RESTRAINT ON SPEECH.**

While there is some variation among the circuits as to when they have jurisdiction to review a TRO order, the U.S. Supreme Court is clear that there is one situation that always requires the availability of immediate review. The Supreme Court unequivocally held that immediate appellate review is constitutionally <u>required</u> when a trial court seeks to restrain speech. *Skokie*, 432 U.S. at 44.

The Sixth Circuit aptly described the tenet in *Proctor & Gamble Co. v. Bankers Tr. Co.* There is a "fundamental difference between a standard TRO issued under Rule 65 of the Federal Rules of Civil Procedure in a non-speech context and a special injunctive order granting a prior restraint. Although we may refer to the latter as a TRO, "it is a different beast in the First Amendment context." *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). The Sixth Circuit continued to explain the rule by pointing to a First Circuit case. When a matter comes to a district court on an emergency basis, in most instances, the responsible course is to temporarily delay the matter so that a careful, thoughtful answer can be crafted. *Id.* (citing *In the Matter of Providence Journal Company*, 820 F.2d 1342, *modified on reh'g by* 820 F.2d 1354 (1st Cir. 1986), *cert. granted and dismissed on other grounds*)).

This approach is proper in most instances, and indeed to follow any other course of action would often be irresponsible. But, absent the most compelling circumstances, when that

approach results in a prior restraint on pure speech by the press it is not allowed.

*Id.*

The concept that parties whose speech is restrained by the government are entitled to a prompt appeal is not new. In fact, the principle was established more than 50 years ago in *Freedman v. Maryland*, 380 U.S. 51 (1965), and has been reaffirmed by the Supreme Court time and time again in cases questioning the constitutionality of a prior restraint, *see, e.g.*, *City of Littleton, Colo. v. ZJ Gifts D-4, LLC*, 541 U.S. 774 (2004); *FW/PBS v. City of Dallas*, 493 U.S. 215 (1990); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975).

This constitutional requirement of swift review flows naturally from courts' recognition of the dangers of prior restraints. "A prior restraint . . . has an immediate and irreversible sanction" that is unlike any other remedy a court may impose, including "a judgment in a defamation case" or even "[a] criminal penalty," because all other sanctions are "subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative" for other remedies. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "Any system of prior restraints of expression comes to [] Court bearing a heavy presumption against its constitutional validity." *New York Times*, 403

U.S. at 714 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

Moreover, the requirement for immediate review in such cases is consistent with the various circuit opinions cited in the previous section. In those examples, the justifications for immediate review of TRO orders in exceptional cases tend to focus on the potential harm. Where First Amendment protected speech is suppressed, the harm is certain, irreparable, and in some cases ongoing. *See CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (citation omitted) ("Where . . . a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment."); *see also Proctor & Gamble*, 78 F.3d at 224.

### III. SPEECH OPPORTUNITIES, ESPECIALLY NEWS REPORTING OPPORTUNITIES, ARE UNIQUELY EPHEMERAL.

It must be said, it is misleading in the context of daily newspaper publishing to argue that a temporary restraining order merely preserves the status quo. The status quo of daily newspapers is to publish news promptly that editors decide to publish. A restraining order disturbs the status quo and impinges on the exercise of editorial discretion. News is a constantly changing and dynamic quantity. Today's news will often be tomorrow's history. This is especially true in the case of news concerning an imminent event such as an election. A restraining order lasting only hours can effectively prevent publication of news that will have an impact on that event and on those that the event affects.

*In re Providence Journal Co.*, 820 F.2d 1342, 1351–52 (1st Cir. 1986).

"[P]ublic interest is much more likely to be kindled by a controversial event of the day than by a generalization, however penetrating, of the historian or scientist." *Bridges v. California*, 314 U.S. 252, 268 (1941). The parties have the right to attend the press briefings, and the public has the right to receive their news reports contemporaneously. *See Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) (acknowledging the harms of "delayed disclosure" with respect to court proceedings); *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (same), *superseded on other grounds, as stated in Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009). "The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020)( citing *Grove Fresh Distrib.,* 24 F.3d at 897).

Reporting on matters of public concern "occupies the highest rung of the hierarchy of First Amendment values." *Snyder*, 562 U.S. at 457; *see also Connick v. Myers*, 461 U.S. 138, 145 (1983) (*quoting NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (noting that speech about matters of public concern is subject to the highest First Amendment protection)).

21

Immediate appellate review is thus critical to ensure that temporary restraining orders do not cause such a loss of First Amendment freedoms even for short durations.

## IV. THE DISTRICT COURT'S DENIAL OF THE MOTION FOR TRO EQUATES TO A PRIOR RESTRAINT ON SPEECH.

Like statutes that regulate speech, court-ordered injunctions that regulate speech are also subject to First Amendment scrutiny. Because "an injunction against speech is the very prototype to the greatest threat to First Amendment values," parties restrained from speaking by the order of a court must have the opportunity to promptly appeal. *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 797 (1994) (Scalia, J., concurring in part and dissenting in part); *Skokie*, 432 U.S. at 44. "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993). These classic examples involve district courts issuing orders restraining the publication of information.

However, there are other forms of prior restraints. Laws that require a permit or license prior to speaking are a form of prior restraint and when the permitting scheme confers unbridled discretion on the licensing authority, they are unconstitutional. "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license,

without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 684 (1998), quoting *Shuttlesworth*, 394 U.S. at 150-151. Further, when a speech-licensing ordinance confers unbridled discretion, the prior restraint is always there, and by definition the statute negatively impacts a substantial amount of protected speech. *ASF, Inc. v. City of Bothell, No. C07-1074Z*, 2007 U.S. Dist. LEXIS 92525, at *11 (W.D. Wash. Dec. 17, 2007)("A prior restraint stops protected speech before it starts.").

Thus, when a court denies a motion for a temporary order to restrain a governmental agency from enforcing a licensing scheme that confers unbridled discretion, the court is giving its imprimatur to a prior restraint and allowing it to continue. This is precisely what occurred here. The press pass Mr. Conradson was required to obtain before engaging in news gathering and reporting is a form of license. The determinations the Defendants-Appellees reached in denying Mr. Conradson a press pass: "(a) do not avoid real or perceived conflicts of interest and (b) are not free of associations that would compromise journalistic integrity or damage credibility," are classic examples of a discretionary decision.

Thus, a court's denial of a motion for TRO can have the same speech-suppressing effect as when the court issues a TRO prohibiting

speech. Here, the district court's denial of the TRO allowed the County to continue violating TGP's and Mr. Conradson's First Amendment rights by imposing prior restraint. Regardless of whether the suppression came from granting a TRO or denying one, the harm is the same and therefore the remedy should be the same—the availability of immediate appeal. That is the case here.

Even if the Court focuses on the fact that the press pass requirements are not content or viewpoint neutral, rather than the fact that they allow unbridled discretion, the result is the same. Like prior restraints, content-based restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). And, as the Motions Panel observed, "the First Amendment provides even stronger protection against viewpoint discrimination, which 'is an egregious form of content discrimination and occurs when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction on speech.' *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 800 (9th Cir. 2011) (cleaned up)." Order at 9 ¶ 2. Thus, the same harm occurs, the same level of scrutiny applies, and the same remedy should be available, i.e., the availability of immediate review.

The body of law discussed above leads to the logical and unescapable conclusion that when a district court's denial of a motion for a TRO permits a governmental entity to continue to restrain speech through content-based or viewpoint-based discrimination, or a prior restraint in the form of a discretionary licensing requirement, the order should be subject to immediate appeal under standards set by the U.S. Supreme Court and the logical application of prior Ninth Circuit law.

## CONCLUSION AND PRAYER

Amicus Curie First Amendment Lawyers Association asks that the Court reaffirm the position of the Motions Panel that the Court has jurisdiction to review the District Court's order denying the TRO and that the Court incorporate language to make clear that the First Amendment requires the availability of immediate appeals of TRO orders that result in the suppression of protected speech.

THE LAW OFFICE OF D. GILL SPERLEIN

**D. GILL SPERLEIN**

D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94102
phone: (415) 404-6615
fax: (415) 404-6616
email: gill@sperleinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, that an exact copy of this Brief was served via ECF to counsel for this case. I certify that all participants in this case are CM/ECF users and were or will be served by CM/ECF.

**/S/ D. GILL SPERLEIN**

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 29(a)(5) because:

· A brief from an amicus may not exceed 7,000 words. This brief includes 4006 words (see also Circuit Rule 32-1(a) (providing word limit for opening briefs));

This brief also complies with the typeface requirements of Rule 32(a)(5) and the type requirements of Rule 32(a)(6) because:

· This brief has been prepared in Century Schoolbook font, a proportionally spaced typeface, using Microsoft Word for MAC version 16.67 with 14-point font.

**/S/ D. GILL SPERLEIN**

D. GILL SPERLEIN
THE LAW OFFICE OF D. GILL SPERLEIN